STATE OF WEST VIRGINIA

*v.*

KENT L. SLIE

(No. 13395)

Decided April 1, 1975.

*Thomas P. Maroney and Guy R. Bucci, William Jack Stevens* for plaintiff-in-error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *Betty L. Caplan and David P. Cleek,* Assistant Attorneys General, for defendant-in-error.

BERRY, JUSTICE:

This is an appeal by Kent L. Slie, defendant below and hereinafter referred to as the defendant, from a final judgment of the Circuit Court of Lincoln County entered December 7, 1972 wherein the Court overruled the defendant's motion for an arrest of judgment and a new trial after the defendant had been convicted by a jury for the crime of kidnapping. On July 23, 1973 this Court granted the defendant a writ of error and supersedeas and on February 18, 1975 the case was submitted for decision upon the briefs and arguments on behalf of the respective parties.

It appears from the evidence at the trial that on June 24, 1971 between 10:30 p.m. and 11:00 p.m. John Triplett, Paul Roberts, Guy Anderson Plumley and David Lee Mullins began hitchhiking home on State Route 3, after attending a ball game in Hamlin. The four youths were picked up by a man driving a light blue 1969 Chevrolet automobile. John Triplett got into the front seat next to the door, David Lee Mullins got in the back seat in the middle, Guy Anderson Plumley was in the back seat on the left side and Paul Roberts was in the back seat on the right side. After driving a few minutes Paul Roberts got out of the car in front of his home and a few minutes later John Triplett got out of the car. Plumley and Mullins then got into the front

seat with Mullins sitting in the middle. Plumley and Mullins testified that the driver then offered them five dollars each if they would help him load some stolen property into the trunk of his car. The boys agreed to this offer and the car was driven up to a remote section off the main road and there the driver of the car stopped, got out of the car, walked around to the trunk and opened it. At the same time, the two boys got out of the righthand side of the car and walked back to the trunk. The driver then informed the boys that they had been kidnapped and Plumley was placed in the trunk of the car and the trunk was closed. The driver then took David Lee Mullins a short distance from the car and told him to take his clothes off and lie down in the middle of the road, whereupon the driver of the car then committed the act of sodomy on his anus. After this act was completed, the driver forced Mullins into the trunk of the car and closed it, and then drove for approximately thirty minutes until he stopped near Little Laurel Creek in Lincoln County. The driver of the car then took Mullins out of the trunk, and again closed the trunk with Plumley still in it. The driver walked down to a shallow creek with Mullins whereupon a struggle ensued when the driver tried to choke Mullins and tried to immerse his head into the water. However, Mullins managed to grab a rock and hit the defendant in the forehead, then broke away from him and ran into the woods. The defendant then opened the trunk and Plumley ran away.

Pursuant to a warrant issued by a justice of the peace on June 27, 1971 the defendant, Kent L. Slie, was arrested at his home near Hamlin in Lincoln County on June 28, 1971 at approximately 11:00 p.m. by state police officers. One of the officers testified at the motion to suppress hearing that the defendant was advised of his rights at the time of his arrest. The defendant was then taken to the Hamlin State Police Headquarters where he was questioned concerning the warrants which had been issued for his arrest. Shortly thereafter, the four youths were taken, one at a time, into the room where the

defendant was being interrogated and each of them identified him at that time as being the driver of the car who had picked them up on the night of June 24th. The only other persons present in the room in which the identifications took place were uniformed state police officers.

Soon after the showup, the defendant was driven from Hamlin to Huntington where he underwent several lie detector tests concerning the murder of a boy who had been sexually assaulted. The defendant was then taken to the state police barracks in Kanawha County and again questioned concerning the alleged murder. The defendant was also taken to a wooded area in Kanawha County, at his suggestion, to search for various items which related to the alleged murder of the boy. Apparently, this search lasted for several hours and late on the evening of June 29th the defendant was transferred back to Hamlin and placed in the Lincoln County jail. The defendant arrived back in Hamlin at approximately 6:00 p.m. and at approximately 7:00 p.m. the defendant, after signing a waiver of rights form, gave a written statement to Corporal Presson of the West Virginia State Police relating to the June 24th incident with the youths. At approximately 8:30 p.m. on June 29th the defendant was placed in the Lincoln County jail, and on the morning of June 30, 1971 he was taken before a justice of the peace for arraignment.

The defendant was subsequently indicted at the November, 1971 term and re-indicted at the March, 1972 term of court on four different indictments for felonies: kidnapping of David Lee Mullins, attempted murder of David Lee Mullins, kidnapping of Guy Anderson Plumley and sodomy committed upon David Lee Mullins. Upon the defendant's motion to elect the state announced that it would proceed upon the indictment charging the kidnapping of David Lee Mullins. Prior to the commencement of the trial the defendant also moved to quash the indictment contending that the indictment was vague and ambiguous and did not properly advise the defendant of the charges against him with

sufficient specificity in order to present an adequate defense. In addition, the defendant filed a motion for a bill of particulars requiring the state to specifically set forth the acts which the defendant allegedly committed. Both of these motions were overruled by the trial court.

On April 3, 1972 the defendant's trial began. Mullins, who was fifteen years of age at the time of the trial, and Plumley, who was thirteen, identified the defendant as the driver of the car, and as the person who had kidnapped them on the night of June 24, 1971. Triplett, one of the other two boys who was picked up by the defendant, also identified the defendant as the driver of the car on June 24, 1971. However, Roberts, the fourth youth in the car testified that he could not identify the defendant as being the driver of the car. At the conclusion of the trial, the defendant moved to strike the testimony of the in-court identifications by the three youths, but the court denied the motion.

At one stage during the trial the judge retired to his chambers to check the record concerning the previous testimony of a witness. The judge did this out of the presence of the jury and out of the presence of the defendant. On another occasion the trial judge and the prosecuting attorney had a conversation concerning one of the instructions, out of the presence of the defendant's counsel and the defendant. This discussion took place in the private chambers of the judge at his request during a power failure when the lights were out in the courthouse.

The errors assigned by the defendant for reversal are as follows: (1) The trial court erred in overruling defendant's motion to quash the indictment on the grounds that it was founded upon an alleged illegally obtained statement taken from the defendant during police interrogation, and without promptly affording defendant a preliminary hearing prior to obtaining the statement; (2) the trial court erred in denying defendant's motion to strike the identification testimony because such identifications by the state's witnesses were based on an al-

leged tainted showup when the defendant was the only suspect present with police officers at police headquarters; (3) the trial court erred in denying defendant's motion to quash the indictment on the grounds that it was duplicitous by joinder of multiple felonies, and in the refusal to grant his motion for a bill of particulars; (4) the trial court committed reversible error by discussing matters pertaining to the trial with attorneys out of the presence of the defendant; (5) the trial court erred in giving instruction 1B offered by the state over the objection of the defendant, on the ground that it improperly dealt with punishment relating to the crime of kidnapping; (6) the trial court erred in refusing to give instruction 15 offered by the defendant relating to the charge of attempted murder indicated in the indictment and in the state's evidence.

The first assignment of error for reversal is not well taken. The defendant contends that the indictment was invalid because it was founded on a statement illegally obtained from the defendant by the police. The statement appears to have been obtained after the defendant had been warned of his constitutional rights, and was voluntarily given. However, even if it were illegally obtained there would not have been good grounds for quashing the indictment. *State v. Riley*, 151 W. Va. 364, 151 S.E.2d 308 (1966). This principle is clearly stated in point 1 of the syllabus of the *Riley* case in the following language: "A motion or prayer to quash an indictment contained in a plea in abatement with an allegation that no legal evidence was introduced before the grand jury is not good grounds for quashing an indictment."

It has been held by the Supreme Court of the United States that the validity of an indictment is not affected by the character of the evidence introduced before the grand jury, and that an indictment valid on its face is not subject to challenge by motion to quash on the ground the grand jury considered inadequate or incompetent evidence in returning the indictment. *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed.

2d 561 (1974); *Costello v. United States*, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956); *Holt v. United States*, 218 U.S. 245, 31 S. Ct. 2, 54 L. Ed 1021 (1910). It has also been held that an indictment is not subject to challenge which is based on information obtained in violation of the defendant's Fifth Amendment privilege against self-incrimination. *Lawn v. United States*, 355 U.S. 339, 78 S. Ct. 311, 2 L. Ed. 2d 321 (1958).

The defendant also questions the use of the statement before the grand jury, because it was obtained without his being promptly taken before a magistrate, as required by Code, 62-1-5, as amended. The statute referred to provides that after an arrest is made the arrested person should be taken without unnecessary delay before a magistrate of the county in which the arrest was made. This procedure should be followed by any person making an arrest, either with or without a warrant, and this Court approves of this procedure and suggests that it be followed in all cases. However, the failure to follow this procedure without anything more involved, did not, under the facts of this case, vitiate a subsequent conviction. *Scarbrough v. Dutton*, 393 F.2d 6 (5th Cir. 1968). See also *Murphy v. Beto*, 416 F.2d 98 (5th Cir. 1969).

Under the second assignment of error the defendant contends that the in-court identification testimony of the state's witnesses was tainted because it was based on a one-to-one showup at police headquarters. It is true that where an accused is identified at a showup at a police station it could be the result of a suggestive atmosphere, and once a witness has identified the accused at the showup he is not prone to change his opinion; thus such evidence should be scrutinized with care. *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, (1967); *Gilbert v. State of California*, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). In all the above cited cases the principal reason that the identification was improper was because of the fact the defendants had been indicted and their attorneys were not

present with them at the lineup. In the case at bar the defendant had not been charged or indicted before the showup in question. In the case of *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967) the accused was taken to the hospital by officers and was identified by the victim in a one-to-one showup, and the identification was upheld in court because of the totality of the circumstances surrounding it. The general rule with regard to an in-court identification of the accused where there has been a prior lineup or showup identification is that all of the circumstances in connection therewith must be considered in order to ascertain whether the in-court identification by the witnesses is proper. *Stovall v. Denno, supra; United States v. Wade, supra.* If the in-court identification of the defendant has an independent origin the evidence with regard to the identification is proper in the trial of the case. *United States v. Wade, supra; United States v. Gilbert, supra.*

One of the state's witnesses, Paul Roberts, stated on direct examination that he had never seen the defendant before and the court instructed the jury not to consider his evidence. The other witnesses testified that they identified the defendant as the driver of the car who picked them up and that their identification was independent from the showup identification, which was only a few days after the crime was committed. Thus, it is clear that the state's evidence with regard to the identification of the defendant was not tainted by the identification at the showup and was based on an independent origin, and considering the totality of the circumstances of the identification in the case at bar such identification was proper.

In the recent case of *State v. Moore*, decided by this Court on March 18, 1975, pertaining to this matter, it was held in point 3 of the syllabus that: "A motion to suppress an in-court identification of an accused based upon alleged unnecessarily suggestive lineup procedures should be overruled where the totality of the circumstances by clear and convincing proof demonstrates that

the incourt identification was based upon observation of the accused at the scene of the crime, independent of the lineup."

There is no merit to the third assignment of error that the court erred in denying defendant's motion to quash the indictment because it was duplicitous by joinder of multiple felonies, and in the refusal to grant his motion for a bill of particulars. The indictment is couched in the language of the kidnapping statute. It is in one count and does not charge multiple felonies. The allegations in the indictment pertain to incidents which occurred during the time of the kidnapping. It is true that separate indictments were returned against the defendant in connection with the events that occurred after the defendant picked up the boys in his car on the night of June 24, 1971. However, the state elected to try the defendant on the charge of kidnapping, which is the only indictment involved in this case. There is no joinder of multiple felonies, and the defendant was specifically advised of the crime of which he was charged and the details connected therewith. It was held by this Court in the case of *Pyles v. Boles*, 148 W. Va. 465, 135 S.E.2d 692 (1964) that an indictment for kidnapping similar to the one in the case at bar was a proper indictment. It was stated in point 3 of the syllabus of the *Pyles* case that: "An indictment for a statutory offense is sufficient if, in charging the offense, it adopts and follows the language of the statute, or uses substantially equivalent language, and plainly informs the accused of the particular offense charged and enables the court to determine the statute on which the charge is founded."

In the case of *State v. Perry*, 101 W. Va. 123, 132 S.E. 368 (1926) this Court stated: "When several and distinct acts connected with the same general offense, and subject to the same penalty, are punishable separately, and as distinct crimes where committed by different persons, they may be considered as representing steps or stages of the same offense, and combined in the same count, when committed by the same person at the same time."

The indictment adequately and fully informed the defendant of the offense for which he was charged and there was no need for a bill of particulars. *State v. Hudson,* 128 W. Va. 655, 37 S.E.2d 553 (1946). The denial of a motion for a bill of particulars rests in the sound discretion of the trial court and unless it appears that such discretion is abused the ruling of the trial court will not be disturbed. *State v. Riley, supra.*

The fourth assignment of error pertaining to matters conducted out of the presence of the defendant during the trial of the case presents a serious question. Apparently this occurred twice during the course of the trial. The first instance occurred when the court and counsel for both the state and the defendant went into the judge's chambers, without the defendant, and had part of the record re-read in order to ascertain whether or not the defendant's counsel was misquoting the evidence. No ruling was made by the court which would affect the defendant in any manner during this time, and the court and counsel returned to the courtroom and proceeded with the trial. Code, 62-3-2, which is of ancient vintage and has been strictly adhered to throughout the years provides that: "A person indicted for felony shall be personally present during the trial therefor. * * *" From the early West Virginia case of *Younger v. The State,* 2 W. Va. 579 (1868), this court has consistently held in many cases since that time that the statute means the defendant must be present in person when any step affecting him is taken from arraignment until final judgment. In the case of *State v. Vance,* 146 W. Va. 925, 124 S.E.2d 252 (1962) this Court held that a technical violation of this statute was reversible error. In that case the defendant, without the knowledge of the judge and attorneys in the judge's chambers, walked out of the chambers and was gone for a period of about five minutes during which time the parties engaged in a discussion regarding the instructions. This Court held that such matter was governed by the case of *State v. Howerton,* 100 W. Va. 501, 130 S.E. 655 (1925) which held that it was reversible error on the sole ground that

instructions were argued and acted upon by the trial court in the absence of the defendant.

However, it was held in the case of *State v. McHaffa*, 110 W. Va. 266, 157 S.E. 595 (1931) that it was not reversible error for the trial court to discuss with counsel in the absence of the defendant an instruction, which was later given, requiring the jury to acquit him of murder in the first degree. The Court stated that the discussion of the instruction excluding first degree murder from the jury's consideration did not prejudice the defendant. It was further stated in that case that the Court was not inclined to extend the doctrine of the *Howerton* case. In the case of *State v. Lucas*, 103 W. Va. 743, 138 S.E. 393 (1927) this Court held that the mere calling of names by the clerk of the jurors selected to try the case, in the absence of the defendant, was not prejudicial error. The same principle was applied in the case of *State v. Roberts*, 122 W. Va. 536, 11 S.E.2d 172 (1940) which involved the preparation of a jury list in the absence of the defendant. In other words, these cases indicate that even if error was committed in matters of this nature, it would not be considered as reversible error in the absence of a showing of prejudice to the defendant.

This Court is of the opinion that the *Vance* case is too technical and should be modified to the extent that unless the absence of the defendant results in prejudice to him it is harmless error. We are, therefore, of the opinion that the reading of the record in the judge's chambers during the defendant's absence, with no ruling having been made thereon by the court in the absence of the defendant, resulted in no prejudice whatsoever to the defendant, and we do not reverse the conviction and judgment in this case on this occurrence.

The second instance is of an entirely different nature. It appears that on the second occasion the judge and the prosecuting attorney, in the absence of the defendant and his attorney, retired to the judge's chambers and discussed matters involving an instruction. The trial court in answering a query of defendant's counsel in

effect admitted that this discussion as indicated above had taken place in his chambers. This occurrence would appear to be more prejudicial than the *Vance* and *Howerton* cases. Neither the defendant nor his attorney was present when the discussion with regard to the instruction took place and this would amount to prejudicial error in the case at bar and constitutes reversible error. See *State ex rel. John R. Grob v. Reece H. Blair, Sheriff, etc.*, decided by this Court April 1, 1975.

The assignments of error five and six are without merit. It is contended in the fifth assignment that instruction 1B offered by the state and given by the court improperly permitted the jury to determine the punishment and erroneously set forth degrees of kidnapping. Instruction 1B is substantially in the language of the statute and an instruction given to the jury which is couched in the language of the statute is not error if warranted by the evidence. *State v. Wilson*, 145 W. Va. 261, 114 S.E.2d 465 (1960). This instruction did not set forth the degrees of kidnapping. It merely stated the numerous acts committed by the defendant during the kidnapping. When several and distinct acts connected with the offense of kidnapping are introduced into evidence during the trial of the case they may be considered as various stages of the same offense although they may constitute distinct crimes when committed by different persons. *State v. Perry, supra.* The provisions of the statute relating to punishment do not prescribe degrees of the crime of kidnapping, and the jury is not required to make any finding with respect to the punishment to be imposed, except where it finds that the defendant should not be punished by confinement in the penitentiary for life. *Pyles v. Boles, supra.*

The defendant's contention that the trial court erred in refusing to give instruction 15 offered by the defendant, which related to finding the defendant guilty of the charge of attempted murder is without merit. This instruction was properly refused by the trial court because the defendant was not charged with attempted murder and was not tried on such charge. He was

charged with and tried for the crime of kidnapping, and the attempted murder evidence was involved during the alleged kidnapping. *Pyles v. Boles, supra.*

Inasmuch as it appears that prejudicial error was committed by the trial court when a discussion was held with the prosecuting attorney out of the presence of the defendant and his attorney with regard to instructions in the case at bar, the judgment of the Circuit Court of Lincoln County is reversed, the verdict of the jury is set aside and a new trial is awarded to the defendant.

*Judgment reversed;
verdict set aside; new
trial awarded.*