# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

May 30, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0714** (Monroe County 12-F-20)

**John E. Mathena,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner John E. Mathena, by counsel Paul S. Detch, appeals his conviction and sentence after a jury found him guilty of obtaining money by false pretenses. Respondent State of West Virginia, by counsel Christopher S. Dodrill, responds in support of the circuit court's June 5, 2013, order sentencing petitioner to one to ten years of incarceration and ordering that petitioner pay restitution to the victim in the amount of $41,924.61. Petitioner also submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Proven Construction ("Proven") was formed in 2008 by petitioner and a business partner, Amy Maloney. From its inception, the partners agreed that only Ms. Maloney would be an authorized signatory on the business accounts, but petitioner was kept apprised of the company's finances. Despite this agreement, petitioner drafted at least one company check. He also wrote checks or made payments on the company's accounts. Ms. Maloney left Proven on June 1, 2010. At that time, petitioner's daughter became the company's office manager and assumed sole signature authority.

In 2010, Walter Smith ("Smith") signed a contract with Proven to build a home on property he owned in Monroe County. The total cost of the construction under the contract was $248,500. According to the contract, petitioner was to arrange for the purchase and delivery of supplies, in addition to the labor. Proven maintained accounts with suppliers, bills were given to Smith for the amount owed, Smith paid Proven, and Proven was to pay the suppliers. In order to ensure that Proven paid the suppliers, Proven was required to provide Smith with a lien waiver each time that Smith made a payment. The lien waivers guaranteed that all services and materials had been paid for and that there would be no unpaid services or materials for which a mechanic's

1

lien could be filed against the property.[1] Smith initially made a 10% down payment on the project in June of 2010. On June 23, 2010, he paid Proven $24,850, that check was deposited into Proven's account, and petitioner provided Smith the first lien waiver. On August 20, 2010, Smith paid Proven $47,836.25 to cover an invoice and petitioner provided another lien waiver with the same terms. Smith paid another invoice in September of 2010 in the amount of $9,940, and petitioner provided another lien waiver on September 9, 2010. Smith became frustrated with Proven's work, and his attorney wrote two letters expressing the same. On September 24, 2010, Smith received another invoice from Proven in the amount of $15,655; Smith paid that amount and received a fourth lien waiver from petitioner. In or about October of 2010, Smith notified petitioner that he had hired a new contractor to complete the house. Smith later discovered that two mechanic's liens totaling over $54,000 had been asserted against the property by Neathawk's Lumber and Superior Concrete.[2] Smith's home was never completed.

In December of 2010, petitioner filed bankruptcy on behalf of Proven. According to petitioner, all of Proven's debts were discharged by the bankruptcy court. On May 22, 2012, petitioner was indicted by the grand jury on a four-count indictment charging him with the felony offense of obtaining money by false pretenses. Petitioner contends that all charges arose from monies paid on a home construction contract with Smith. Petitioner admits that he failed to pay suppliers on two projects, including the project with Smith.

A jury trial was held on August 16, 17, and 18, 2013. At the conclusion of the trial, the jury found petitioner guilty of one count of obtaining money by false pretenses.[3] On June 3,

---

[1]It appears that petitioner failed to include the lien waivers in the appendix, and the State refers only to testimony regarding those waivers. The lien waivers for a different project, the Montgomery project, are included as exhibits to the Rule 404(b) motion filed before the circuit court. Those waivers state that

> Proven Construction Management Inc. hereby releases, waives, and quitclaims right to a construction lien in the amount of $____ for improvements to, or materials furnished to, the property described as Montgomery property… through the date of ____. The undersigned warrants that all laborers and subcontractors employed by it, and all suppliers from which it has acquired materials, have been paid their respective portion of prior claims, and that none of such laborers, subcontractors, or suppliers have any claim of lien against the project. . . .

The lien waivers identify the company as Proven Construction Management Inc., and are signed by petitioner who is identified as the company president. The waivers are also notarized.

[2]Part of the materials covered by the liens were returned, reducing the liens to $41,924.61.

[3]The State dismissed Count 1 of the indictment (obtaining $24,850 from Smith by use of a lien waiver), the jury was unable to reach a verdict as to Counts 2 and 3 (obtaining $47,836.25 from Smith by use of a lien waiver and obtaining $9,940 from Smith by use of a lien waiver), and petitioner was found guilty of Count 4 (obtaining $15,655 from Smith by use of a lien waiver). The total amount of these lien waivers is $98,281.25.

2013, petitioner appeared before the circuit court for sentencing, and by order entered on June 5, 2013, petitioner was sentenced to one to ten years of incarceration. Petitioner's motion for probation or other alternative sentence was denied, as was his motion to stay the imposition of sentence to permit him to undergo back surgery. Petitioner was directed to pay restitution to Smith in the amount of $41,924.61. Two counts of the indictment were held in abeyance pending negotiations between the parties, pursuant to a motion by the State. Petitioner appeals from that order.[4]

"The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997).

On appeal, petitioner asserts five assignments of error that he groups into four arguments. Petitioner's first assignment of error is that the lower court violated petitioner's constitutional right to be adequately informed of the charges pending against him, particularly in failing to grant a motion for a bill of particulars so petitioner could be informed of what specific transactions the State contended resulted in criminal conduct on each count of the indictment. Petitioner argues that a bill of particulars was necessary to protect him against double jeopardy.

West Virginia Code § 62-1B-1 states that "[t]he court for cause may direct the prosecuting attorney to file a bill of particulars. . . ." However, "[a]n indictment for a statutory offense is sufficient if, in charging the offense, it adopts and follows the language of the statute, or uses substantially equivalent language, and plainly informs the accused of the particular offense charged and enables the court to determine the statute on which the charge is founded." Syl. Pt. 3, *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975) (quoting Syl. Pt. 3, *Pyles v. Boles*, 148 W.Va. 465, 135 S.E.2d 692 (1964)). Further,

> "[t]he granting or denial of a motion for a bill of particulars . . . rests in the sound discretion of the trial court, and unless it appears that such discretion is abused the ruling of the trial court will not be disturbed." Syllabus Point 7, in part, *State v. Nuckols*, 152 W.Va. 736, 166 S.E.2d 3 (1969).

Syl. Pt. 2, *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110 (1982). The felony indictment below has four counts for obtaining money by false pretenses. Despite petitioner's contentions to the contrary, each count contains the necessary information, including the crime alleged, the date of each alleged crime, and the specific dollar amount for each count of obtaining money by false pretenses. Based upon our review of the record, we find that the circuit court did not abuse its discretion in denying petitioner's motion for a bill of particulars.

Petitioner's second assignment of error is that the circuit court erred in permitting the admission of evidence under Rule 404(b) of the West Virginia Rules of Evidence. As part of this error, he also contends that the circuit court permitted the use of a Superior Supply bill that was

_____

[4]Petitioner filed his notice of appeal on July 5, 2013. On August 30, 2013, the circuit court entered an order denying petitioner's motions for reconsideration of sentence.

written off by Superior Supply and not assessed against Smith. Prior to trial, the State gave petitioner notice that it intended to introduce evidence related to another of petitioner's construction projects, the failed construction of a building for George Montgomery ("Montgomery"), during the trial of this matter. However, petitioner argues that he was not given adequate notice to prepare and that testimony and evidence related to the Montgomery project would be confusing. Petitioner contends that it was undisputed that Montgomery failed to pay his portion of the contract price and that when Montgomery ordered petitioner off of the premises, Montgomery owed petitioner and Proven $62,000. There were also issues regarding the payment of supply bills and invoices on the Montgomery project. Petitioner claims that the circuit court's admission of such evidence created confusion.

The State provided notice of its intent to use Rule 404(b) evidence on March 13, 2013, and a hearing was held on the matter on March 28, 2013. The circuit court heard petitioner's objections as to timeliness during that hearing, including petitioner's counsel's contention that he did not have time to confer with his client until minutes before the hearing and that counsel had no ability to obtain any of the records or subpoena witnesses. We have previously found that

> "Rule 404(b) of the West Virginia Rules of Evidence requires the prosecution in a criminal case to disclose evidence of other crimes, wrongs or acts prior to trial if such disclosure has been requested by the accused; however, upon reasonable notice such evidence may be disclosed for the first time during trial upon a showing of good cause for failure to prove the requested pretrial notice."

Syl. Pt. 3, *State v. Mongold*, 220 W.Va. 259, 647 S.E.2d 539 (2007). Further,

> "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts . . . If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. . . ." Syllabus point 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994).

Syl. Pt. 1, in part, *Mongold* at 261-62, 647 S.E.2d at 541-42.

The State provided approximately two weeks notice prior to the hearing on the Rule 404(b) evidence. Petitioner has not presented any evidence or affidavits detailing why counsel was unable to consult with petitioner until minutes before the hearing, as alleged. He has also failed to present information as to why he did not have access to the invoices at issue that should

have been received by and in the possession of petitioner's business. As set forth in the notice, the State sought to introduce the Montgomery testimony for the purpose of establishing petitioner's "intent to fraudulently obtain money from his customers . . . by employing a common plan or scheme wherein [petitioner] would promise that he would pay all subcontractors and suppliers in exchange for receiving payment from the victim; [and] the absence of mistake or accident in the nonpayment. . . ." The State set forth that it was prepared to present testimony at an in camera hearing to establish by a preponderance of the evidence that the alleged prior bad acts occurred and that petitioner participated in the prior bad acts or crimes. The State further asserted that the evidence was relevant to the prosecution of the case and that the probative value outweighed its prejudicial effect. It also stated that the State would offer a proposed limiting instruction regarding such evidence.

During the March 28, 2013, pre-trial hearing, including the hearing on the Rule 404(b) evidence, the State reminded the circuit court that during a hearing on March 4, 2013, it had informed the court that it intended to introduce some evidence pursuant to Rule 404(b).[5] While a hearing had originally been set for March 18, 2013, Montgomery advised that he had to attend a funeral on that date, so the State had filed a motion to continue. The circuit court proceeded to hear arguments related to the Rule 404(b) evidence and heard testimony from Montgomery and petitioner on that subject. The circuit court then heard additional argument from counsel and concluded that the State had met its burden. Therefore, the circuit court found that the State would be permitted to offer the proposed Rule 404(b) evidence at trial.

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (citations and footnotes omitted). It is clear from the record that petitioner had adequate notice of the proposed evidence, the circuit court conducted the necessary hearing, and it determined that the probative value of the evidence outweighed the prejudicial nature of the same. There is no dispute that Montgomery entered into a contract with petitioner and Proven to build a home or that liens were asserted against Montgomery's property by suppliers and/or subcontractors due to petitioner's failure to pay the same. Thus, there was no clear error in the circuit court's finding that the alleged acts occurred. In considering the evidence, it is clear to this Court that the evidence was admissible for a legitimate purpose, as the same conduct was alleged to have occurred with both Montgomery and Smith with the same result – liens against the property. Finally, we find that the circuit court did not abuse its discretion in finding that the evidence was more probative than prejudicial. As set forth herein and as alleged by the State, the evidence showed petitioner's

---

[5]The transcript from the March 4, 2013, hearing is not included in the record before this Court. However, we note that petitioner did not object to the State's representation during the March 28, 2013, hearing.

intent to fraudulently obtain money from his customers by employing a common plan or scheme. This was certainly probative evidence of petitioner's guilt related to the Smith project. For these reasons, we find that the circuit court did not err in permitting the admission of the Rule 404(b) evidence related to the Montgomery project.

Petitioner's third assignment of error is that the State committed reversible error at the close of the State's case when the prosecutor argued that petitioner had planned bankruptcy to further his fraud over Smith. It appears that petitioner joins his fourth assignment of error in this single argument – that the circuit court erred in not dismissing the charges arising from debts that were discharged due to bankruptcy. The bulk of petitioner's arguments in support of this assignment relate to bankruptcy proceedings themselves and the discharge of debts during bankruptcy. He further argues that considering bankruptcy while attempting to continue to operate a business is not fraud.

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995). Further, "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *id.* In the instant case, during petitioner's closing argument, petitioner's counsel argued that the case was not a case of fraud, just a case of a failing business. Petitioner's counsel asked the jury what a guilty person would do, arguing that petitioner's bankruptcy was evidence of his innocence. Then, during his short closing rebuttal, the prosecutor directly countered that argument, noting that within a week of receiving his last payment from Smith, petitioner began the paperwork to file for bankruptcy. He then said, "What does a person guilty of obtaining money by false pretenses do? He files bankruptcy to avoid paying the people that he swindled."

A review of the record gives the appearance that the State was simply disputing petitioner's assertions regarding his actions surrounding bankruptcy. This isolated remark did not have a tendency to mislead the jury and prejudice petitioner. Further, our review of the record shows that absent this single remark, there was ample evidence on which the jury could convict petitioner of the sole count for which he was convicted. Petitioner does not argue and the transcript does not reveal that the State made the comment in order to divert the jury's attention to extraneous matters. Certainly evidence of the bankruptcy and the crimes themselves had been before the jury throughout the trial. Therefore, we find that the State did not commit reversible error with the remark at issue.

With regard to petitioner's contention that the circuit court erred in not dismissing the charges arising from debts that were discharged due to bankruptcy, we have set forth the following standard of review:

6

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Petitioner seems to confuse the business's bankruptcy and the actions for which petitioner was convicted of obtaining money by false pretenses. The liens asserted against Smith's property were not asserted by or against petitioner or his business. Instead, the liens were asserted by suppliers and/or contractors who were not paid for goods and services provided on the Smith project. The jury independently determined that petitioner was criminally responsible for one count of obtaining money by false pretenses, despite hearing evidence of Proven's bankruptcy. Upon our review of the record we cannot find that the circuit court's factual finding on this issue was clearly erroneous.

Petitioner's fifth and final assignment of error is that the circuit court erred in ordering restitution in an amount three times the amount of which petitioner was found guilty. Petitioner essentially argues that he was ordered to pay treble damages to further the circuit court's intent to return to a debtors' prison system.

"The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). Pursuant to the Victim Restitution Act of 1984, West Virginia Code § 61-11A-4 requires that when a court sentences a defendant convicted of a felony or misdemeanor causing physical or economic injury or loss to a victim, it shall order that the defendant make restitution to any victim of the offense. West Virginia Code § 61-11A-4(b) states that the order shall require that the defendant in the case of an offense resulting in damage to, loss of, or destruction of property of a victim of the offense "pay an amount equal to the greater of: (i) The value of the properly on the date of sentencing; or (ii) the value of the property on the date of the damage, loss or destruction less the value . . . of any part of the property that is returned[.]"

Under *W.Va.Code,* 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider.

Syl. Pt. 3, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997).

7

During the sentencing hearing, Smith testified that he had lawsuits pending against him related to materials provided for his unfinished home. The State argued that Smith was "out" approximately $90,000, while suppliers and other groups were "out" over $100,000 combined, related to the Smith project. The State requested that petitioner be sentenced to incarceration and ordered to pay restitution in the amount of the two mechanic's liens filed against the property: $32,332.37 for the outstanding portion of Neathawk's mechanic's liens and $9,592 for Superior Supply's mechanic's lien, which had not been perfected in court. The total of those liens was $41,924.61, and that was the amount the circuit court ordered petitioner to pay to Smith as restitution. In setting forth sentencing, the circuit court stated that petitioner had made a number of oral and written representations to Smith and that in reliance on those representations, Smith paid him over $90,000, but Smith was being sued for $32,000 by Neathawk. The circuit court pointed to the unpaid bills and said that while the amount should probably be greater, the court found the amount reasonable under the circumstances.

While petitioner complains about the fact that the amount ordered in restitution exceeds the amount set forth in Count 4 of the indictment, we have previously held as follows:

> This Court believes that the clear intention of the Legislature in enacting W.Va.Code § 61–11A–4(a) was to enable trial courts to require convicted criminals to pay all losses sustained by victims in the commission of the crime giving rise to the conviction. Any other interpretation would run counter to the legislative intent that "all that is possible" be done, an intent set forth in W.Va.Code § 61–11A–1(b).

*State v. Whetzel*, 200 W.Va. 45, 48, 488 S.E.2d 45, 48 (1997). Further, "the burdens imposed in a criminal trial are distinct from those utilized in the determination of restitution following conviction or admission of guilt for the underlying offense." *State v. Cummings*, 214 W.Va. 317, 321 n.1, 589 S.E.2d 48, 52 n.1 (2003). As we recognized recently,

> A circuit court formulating a restitution award to a victim who suffers psychological or economic injuries pursuant to W.Va. Code § 61-11A-4(a), should consider the factors set forth in W.Va. Code § 61-11A-5(a) [1984] of the *Victim Protection Act of 1984*. These factors include (1) the amount of the loss sustained by the victim as a result of the offense; (2) the financial resources of the defendant; (3) the financial needs and earning ability of the defendant and the defendant's dependents; and (4) such factors as the court deems appropriate.

Syl. Pt. 3, in part, *State v. Rebecca F.*, No. 13-0311, 2014 WL1876151 (W.Va. May 8, 2014). It is clear that the circuit court had an adequate factual basis for ordering restitution in the amount of $41,924.61, the amount of bills outstanding against Smith's property, the majority of which fell within a mechanic's lien that had been filed against the property. Thus, for the reasons set forth herein, we find that the trial court did not abuse its discretion in ordering restitution.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 30, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II