No. 22-0239 – *State of West Virginia v. David Ray Thomas*

**FILED**

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Wooton, Justice, dissenting:

In what appears to be its single-minded determination to uphold the conviction of a particularly unsympathetic defendant accused of a particularly reprehensible crime, the majority has *sub silentio* overruled decades of settled law and failed "to hold the balance nice, clear and true between the State and the accused," thus denying petitioner David Ray Thomas ("the petitioner") due process of law. *See Tumey v. Ohio*, 273 U.S. 510, 532 (1927). For these reasons, I respectfully dissent.

## I.

The majority holds that the petitioner was not entitled to an instruction on attempt to commit sexual assault in the first degree because attempt to commit the crime is not a lesser included offense thereof [1] and because in any event there was no evidence to support the instruction. I disagree as to both conclusions. In my view, under the facts and circumstances of this case the petitioner was entitled to have the jury instructed on attempt, and the circuit court's refusal to do so constituted reversible error.

---

[1] Although the statement of law articulated in syllabus point six of the majority opinion applies by its express terms only to sexual assault in the first degree, the Court's rationale as explicated in the opinion would apply to any criminal offense, without exception. *See* text *infra*.

1

In reaching its legal conclusion, the majority relies on inapposite case law, cites a seventy-year-old decision that simply cannot bear the weight put upon it, and ignores the clear command of Rule 31(c) of the West Virginia Rules of Criminal Procedure, which provides that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged *or of an attempt to commit either the offense charged* or an offense necessarily included therein if the attempt is an offense."[2] (Emphasis added).

---

[2] The majority's attempt to reconcile its decision with the clear and unambiguous language in Rule 31(c) is difficult to follow. As the majority correctly notes, the rule contains disjunctive language that allows a defendant to be found guilty of either a lesser included offense *or* an attempt to commit the offense charged, the latter of which the majority characterizes as a "lesser offense" as opposed to a "lesser included offense." The majority then explains that

> [l]esser *included* offenses offer a criminal defendant the benefit of mitigation for not having committed some extra element of the greater offense that is tantamount to greater culpability. The inchoate crime of attempt, by contrast, is a "lesser offense" because it offers the defendant mitigation insofar as the crime intended was not *accomplished* either by choice or by happenstance.

If one accepts the majority's distinction between "lesser included offenses" and "lesser offenses," then syllabus point six of the majority's opinion is mere dicta because the issue in this case isn't whether attempt to commit first-degree sexual assault is a lesser included offense of first-degree sexual assault; under the majority's analysis, attempt can *never* be a lesser included offense of *any* crime. No, says the majority, attempt is simply a "lesser offense" where the evidence shows that the crime was intended but was not accomplished either by choice of by happenstance. Because there was evidence in the instant case to support a finding that this is exactly what happened here, the petitioner was entitled to have the jury instructed on attempt.

It is noteworthy that with one exception, *see* text *infra*, none of the cases upon which the majority rely involve the issue presented here: whether attempt to commit the crime charged is a lesser offense of that crime.[3] It is readily apparent that the analytical framework in these cases, which centers on the question of whether it is possible to commit the crime charged ("the greater offense") without having first committed the lesser offense,[4] is wholly different from that in the instant case. In that regard, the circuit court instructed the jury that it could convict the petitioner of first-degree sexual assault if it found that

> [o]n or about May 1, 2016 and July 8, 2016, [the petitioner] did engage in sexual intrusion with another person, A.M., by penetrating, however slight, the female sex organ of A.M. for the purpose of degrading or humiliating A.M. or for the sexual desire of [the petitioner]. When [the petitioner] was 14 years old or more and A.M. was younger than 12 years old and when A.M. was not married to [the petitioner].

---

[3] *See State v. Wilkerson*, 230 W. Va. 366, 738 S.E.2d 32 (2013) (whether battery is a lesser included offense of robbery); *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002) (whether brandishing is a lesser included offense of wanton endangerment with a firearm); *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994) (whether larceny is a lesser included offense of burglary); *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982) (affirming the holding of *Louk* but finding that the defendant had not contested the particular elements that distinguished the two offenses); *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997) (per curiam) (whether wanton endangerment is a lesser included offense of malicious assault); and *State v. Dellinger*, 178 W. Va. 265, 358 S.E.2d 826 (1987) (per curiam) (whether sexual abuse in the first degree is a lesser included offense of sexual assault in the first degree).

[4] *See Bell*, 211 W. Va. at 311, 565 S.E.2d at 433.

In its most basic formulation, the petitioner's argument is that the evidence of record could support a finding that although he tried, he didn't manage to complete a sexual assault because, as A.M.'s case worker testified at trial, A.M. initially "denie[d] penetration. She says that the incident stopped when [the petitioner] heard the bathroom door open." *See* Syl. Pt. 4, *State v. Minigh*, 224 W. Va. 112, 680 S.E.2d 127 (2009) ("In order to constitute the crime of attempt, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime." (citation omitted)).[5]

It is well established in our law – and, critically, in the procedures followed by prosecutors and defense attorneys every day in the circuit courts of this State – that the attempt to commit a crime is a lesser included offense of that crime. *See, e.g., State v.*

---

[5] West Virginia Code section 61-11-8 (2020) provides, in relevant part, that

> Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows:
>
> . . . .
>
> (2) If the offense attempted be punishable by imprisonment in the penitentiary for a term less than life, such person shall be guilty of a felony and, upon conviction, shall, in the discretion of the court, either be imprisoned in the penitentiary for not less than one nor more than three years, or be confined in jail not less than six nor more than twelve months, and fined not exceeding five hundred dollars.

*Slater*, No. 16-1129, 2017 WL 4772888, at *1 (W. Va. Oct. 23, 2017) (memorandum decision) (the defendant was indicted on one count of delivery of a controlled substance, after which "[h]e entered into a plea agreement with the State whereby he agreed to plead guilty to attempt to commit a felony, a lesser-included offense."); *State v. James F.*, No. 15-0194, 2016 WL 2905508, at *1 (W. Va. May 18, 2016) (memorandum decision) (the defendant was indicted on two counts of first degree sexual assault and two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust, after which he "pled guilty to two counts of attempt to commit first degree sexual assault and one count of attempt to commit sexual abuse by a parent. The written plea agreement stated that the three felony attempt counts to which he was pleading guilty were 'lesser-included offense(s) of Counts 1, 2, and 3 of the Indictment.'"); *State v. Michael Austin S.*, No. 14-0133, 2015 WL 7304499, at *3 (W. Va. Nov. 19, 2015) (memorandum decision) (pursuant to the defendant's plea, the circuit court adjudged him "guilty of felony offense of Attempt to Commit a Felony, a lesser included offense of 1st Degree Sexual Assault as contained in Count I of the Indictment in this case; upon conviction for the felony offense of Attempt to Commit a Felony, a lesser included offense of Sexual Abuse by a Parent, Guardian or Custodian, as contained in Count II of the Indictment in this case; and upon conviction for the felony offense of Attempt to Commit a Felony, a lesser included offense of 1st Degree Sexual Assault, as contained in Count III of the Indictment."); *State v. Sykes*, No. 13-1283, 2015 WL 508188, at *1 (W. Va. Feb. 6, 2015) (memorandum decision) (the defendant was indicted on one charge of child abuse causing serious bodily injury and one count of child neglect causing serious bodily injury, and "pled guilty to one count of attempt to commit

5

child abuse causing serious bodily injury, a lesser included offense of count one of the indictment, and to one count of attempt to commit child neglect causing serious bodily injury, a lesser included offense of count two of the indictment.").

Indeed, the case upon which the majority most heavily relies, *State v. Franklin*, 139 W. Va. 43, 79 S.E.2d 692 (1953), states clearly – and often – that "[i]t is well settled in this jurisdiction that one who acts as the principal in the first degree in the commission of rape, may, under an indictment charging him with rape, and on evidence sufficient to warrant a conviction of rape, be convicted of an attempt to commit rape," *id*. at 52, 79 S.E.2d at 697; that "it would seem by the very statute itself [West Virginia Code section 61-11-8][6] that a constituent element of an attempt to commit a crime is the failure or the prevention of the attempt[,]" 139 W. Va. at 54, 79 S.E.2d at 698; that "[i]n the *Collins* [*State v. Collins*, 108 W. Va. 98, 150 S.E. 369 (1929)] case . . . this Court simply held that embraced in the evidence tending to establish defendant's actual and physical raping of prosecutrix, there was the minor offense of the attempt to commit the crime of rape[,]" 139 W. Va. at 56, 79 S.E.2d at 699; and that "[i]t seems to be well established in the Virginias that . . . a conviction for an attempt to commit the crime charged in the indictment will be sustained, where the defendant is the principal in the first degree[.]" 139 W. Va. at 58-59, 79 S.E.2d at 701. In short, our relevant precedents – those which concern the issue actually presented in this case – reveal that attempt to commit a crime is always a lesser included

---

[6] *See supra* note 5.

offense in a case where the defendant is charged as a principal, and that the language of Rule 31, "[t]he defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit . . . the offense charged[,]" accurately reflects our longstanding practice in this regard.

Ignoring all of the above, the majority zeroes in on one sentence contained in syllabus point four of *Franklin*: "the failure or prevention of the accused to commit the offense attempted is as much an element of the attempt to commit the offense as the immediate specific intent to commit the offense and an overt act in furtherance of such intent." 129 W. Va. at 43, 79 S.E.2d at 693, Syl. Pt. 4, in part. From this the majority springboards to the conclusion that "[t]he crime of attempted sexual assault in the first degree requires an element that is not required in the greater offense, namely the failure or prevention of the accused to actually commit the offense" and thus cannot be a lesser included offense. This cursory analysis is fatally flawed in two respects. First, the syllabus point is recited by the majority without any consideration of the issues actually raised and resolved in the *Franklin* opinion – an approach that, ironically enough, the *Franklin* Court specifically counselled against: "The syllabus of the case must, of course, be read in the light of the opinion." *Id*. at 57, 79 S.E.2d at 700 (citations omitted). The issue in *Franklin* was not whether attempt to commit rape was a lesser included offense of rape, because the Court noted multiple times that it is, *see* text *infra*; rather, the issue was whether a defendant could be found guilty of attempt to commit a rape in a case where

7

> under the evidence, if he acted at all in a criminal way, [he] aided and abetted the principal perpetrator of the crime [by holding the victim's legs as the principal perpetrator raped her]. Under the evidence in this case, the jury should have found the defendant guilty of rape as principal in the second degree or not guilty.

*Id*. at 62, 79 S.E.2d at 702-03. Second, the majority's *Franklin*-based rationale – that the crime of attempt "requires an element that is not required in the greater offense, namely the failure or prevention of the accused to actually commit the offense" – would apply to the vast majority of all criminal offenses. Thus, in all but a handful of cases (those where attempt is specifically criminalized in the text of the criminal statute) the State can no longer agree to allow the defendant to plead guilty to attempt without first going through the process of securing a superseding indictment or an information that specifically charges that offense.[7] And in the myriad cases where such pleas have been entered, this Court can reasonably expect a flood of habeas petitions from individuals who have pled guilty to a crime – attempt – with which, according to the majority, they were never charged.

---

[7] It is worth recalling that "[a]t common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed *as an aid to the prosecution* in cases in which the proof failed to establish some element of the crime charged. *Beck v. Alabama*, 447 U.S. 625, 633 (1980) (emphasis added).

To the extent that the majority opinion can be read as accepting the circuit court's determination that there was no evidence to support an instruction on attempt, I disagree with this as well. The victim's case worker testified that in A.M.'s initial interview, she "denie[d] penetration. She says that the incident stopped when [the petitioner] heard the bathroom door open." Further, during cross-examination defense counsel took A.M. through the salient points of her interview with Child Protective Services ("CPS"), including the following:

> Q: Do you remember telling [the interviewer] that there was no penetration?
>
> A: Yes.
>
> Q: *Was that true?*
>
> A: *Yes.*

(Emphasis added). In light of this testimony, I fail to see how the circuit court concluded that there was no evidence to support an instruction on attempt. In my view, if the jury believed that A.M.'s initial recounting of events was accurate, which A.M. specifically affirmed at trial, then it could reasonably have concluded that the petitioner "attempt[ed] to commit an offense, but fail[ed] to commit it" and was thus guilty of attempt. *See* W. Va. Code § 61-11-8; *see also supra* note 5.

Finally, the majority suggests, but does not go so far as to hold, that the petitioner was not entitled to an attempt instruction because "he relied on a misidentification defense, not mitigation for a crime that he failed to complete because he

9

was interrupted during its commission." In support of this suggestion, the majority cites the following statements of counsel made during closing argument: "Something may have happened to this child. I don't know. Let me tell you, that man [the petitioner] didn't do it."

This is *not* a misidentification argument and, based on my review of the record in this case, it is clear that the petitioner did *not* mount a misidentification defense. His counsel did not contend, either through his questioning on cross-examination of the State's witnesses or his arguments to the jury, that A.M. and her mother were mistaken or confused as to the identity of the perpetrator. Rather, the petitioner's defense was simply that he hadn't committed the crime. And in any event, I strongly disagree with any implication that a criminal defendant can have one, and only one, defense, a notion the majority attributes to this Court's opinion in *State v. Spinks*, 239 W. Va. 588, 803 S.E.2d 558 (2017). But *Spinks* says no such thing; rather, the Court found that defendant Spinks was not entitled to have the jury instructed on the lesser included offenses of second-degree murder or manslaughter because he "did not present any evidence from which the jury could have concluded that [he] killed Elizabeth without premeditation. Nor did he claim that he was suddenly provoked by something Elizabeth said or did." *Id*. at 609, 803 S.E.2d at 579. Therefore, we concluded, "[b]ecause there was no evidence relating to second-degree murder or manslaughter introduced at trial, the circuit court was not required to give an instruction on lesser-included offenses and its failure to do so was not plain error." *Id*. at 610, 803 S.E.2d at 580. In short, the defendant's problem in *Spinks* was purely an

10

evidentiary one: there was no evidence in the record upon which a jury could base a finding of guilt on any lesser included offenses.

In summary, the petitioner was entitled to an instruction on attempt, and the circuit court's refusal to give one was reversible error. In this regard, our law provides:

> "In *State v. Stalnaker,* 167 W.Va. 225, 279 S.E.2d 416 (1981), this Court noted that 'a trial court must give an instruction for a lesser included offense when evidence has been produced to support such a verdict.' *Id.* at 227, 279 S.E.2d at 417, *citing State v. Cobb,* 166 W.Va. 65, 272 S.E.2d 467 (1980). Further, 'it is reversible error for a trial court to refuse to instruct a jury on lesser offenses charged in the indictment if there is any evidence in the record to prove such lesser offenses[.]' *State v. Wayne,* 162 W.Va. 41, 46, 245 S.E.2d 838, 842 (1978), *overruled on other grounds, State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983)[.]"

*Bell*, 211 W. Va. at 311, 565 S.E.2d at 433; *see also* Syl. Pt. 2, *State v. Shingleton*, 222 W. Va. 647, 671 S.E.2d 478 (2008) (per curiam) ("'Where there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so.' Sy. Pt. 7, *State v. Alie*, 82 W. Va. 601, 96 S.E. 1011 (1918).").

## II.

There are two other issues in the case which require brief discussion; although both involve rulings or conduct during the trial which I consider to be error, neither standing alone is reversible error. However, as set forth *infra*, errors cannot always

be compartmentalized into individual boxes marked "harmless" and "reversible"; especially in a case where the State's evidence is weak, every error may constitute another brick in the proverbial wall. In my view, this is such a case. *See* Syl. Pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) ("Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.").

I turn first to an issue whose analytical roots are found in two distinct lines of case law. The petitioner alleges (and the State does not dispute) that while he was cross examining A.M.'s mother at trial he learned for the first time that in the initial stages of the police investigation she had been shown a photograph of the petitioner and asked, "is this Dayo?" This raises two questions: whether the procedure utilized by the police was a prejudicial "show-up," and whether the State's failure to apprise counsel of this information was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

In my view, the first question is an easy one. As this Court acknowledged in *State v. Slie*, 158 W. Va. 672, 213 S.E.2d 109 (1975),

> [i]t is true that where an accused is identified at a showup at a police station it could be the result of a suggestive atmosphere, and once a witness has identified the accused at the showup he is not prone to change his opinion; thus such evidence should be scrutinized with care.

*Id*. at 679, 213 S.E.2d at 115 (citing *United States v. Wade*, 388 U.S. 218 (1967)); *cf. State v. Rummer*, 189 W. Va. 369, 381, 432 S.E.2d 39, 51 (1993) ("Without question, almost any one-on-one confrontation between a victim of a crime and a person whom the police present to him as a suspect must convey the message that the police have reason to believe him guilty. The psychological factors [present] create a real risk of misidentification in such circumstances. . . . [One must] start then from the premise that significant suggestion is inherent in the use of any showup[.]") (citing *U.S. ex rel. Kirby v. Sturges,* 510 F.2d 397, 403 (7th Cir.), *cert. denied,* 421 U.S. 1016 (1975)). In the instant case, the circuit court's tortured attempt to distinguish between showing a witness a photograph for purposes of identification of the accused and showing it for purposes of "confirming" an identification of the accused is entirely insupportable; when police officers showed A.M.'s mother a photograph of the petitioner and asked, "is this Dayo?", this was unquestionably a "show-up" under our precedents. *See State v. James*, 186 W. Va. 173, 177, 411 S.E.2d 692, 696 (1991) ("Clearly, an 'array' of one photograph is impermissibly suggestive. . . . Single photograph identifications raise grave concern about the reliability of the witness's identification, and this Court will not accept them.").

However, the dispositive question as to the "show-up" – again, considering this issue standing alone – is whether the mother's identification of the petitioner at trial was "so tainted as to require suppression of an in-court identification[,]" Syl. Pt. 3, in part, *State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976). Based on the facts of record

the answer must be no, as not only A.M.'s mother but also the child herself testified that Dayo was well known to them, having been to their home on several occasions.

As noted *supra*, the particular circumstances of this "show-up" also raise a *Brady* issue, since it is undisputed that the State never provided defense counsel with any of the information recited above. Although the prosecutor professed to be just as surprised as defense counsel (and we have no reason to disbelieve this), it is firmly established in our law that

> [a] police investigator's knowledge of evidence in a criminal case is imputed to the prosecutor. Therefore, a prosecutor's disclosure duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982) includes disclosure of evidence that is known only to a police investigator and not to the prosecutor.

Syl. Pt. 1, *State v. Youngblood*, 221 W. Va. 20 650 S.E.2d 119 (2007). The problem here is that because the "show-up" issue arose in the middle of the trial, there has been virtually no factual development as to exactly what happened and what was said during the police interview of A.M.'s mother. Accordingly, there is no basis upon which this Court could make a threshold determination as to whether the State's failure to produce the evidence deprived the petitioner of information that would have been favorable, either as exculpatory or impeachment evidence, had it been timely disclosed; or whether the State's failure to produce the evidence was prejudicial. *See* Syl. Pt. 3, *Buffey v. Ballard*, 236 W. Va. 509, 782 S.E.2d 204 (2015) ("There are three components of a constitutional due process violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),

14

and *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.").

The second issue is the petitioner's claim that the prosecutor's statements vouching for the credibility of A.M. during closing argument – and make no mistake, that is exactly what the prosecutor was doing – were far over the line of permissible argument. *See* Syl. Pt. 2, in part, *State v. Hamrick*, 216 W. Va. 477, 607 S.E.2d 806 (2004) ("It is improper for a prosecutor in this State to '[A]ssert his personal opinion as to the justness of a cause, *as to the credibility of a witness ...* or as to the guilt or innocence of the accused....' ABA Code DR7–106(C)(4) in part.") (emphasis added). In this case, the State was not content to vouch for A.M.'s credibility once; the prosecutor did it twice.

Had the circuit court not promptly intervened, first by giving a curative instruction and then by sustaining defense counsel's objection, thus shutting things down, I would have found the statements, standing alone, to be reversible error. A prosecutor

> may prosecute with earnestness and vigor –indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212 (1960).

15

I conclude by returning to my earlier observation that although the petitioner's second and third errors were not so prejudicial, standing alone, as to require reversal, the cumulative effect of the three errors in this case lead me to the conclusion that the petitioner did not receive a fair trial. I come to this conclusion because, as noted, evidence of the petitioner's guilt was not strong. The victim, A.M., initially stated that there had been no penetration and then affirmed the truth of that statement at trial; and further, the statements and testimony of A.M. and her mother were diametrically opposed as to whether A.M. had ever disclosed the sexual assault at or near the time of its alleged occurrence.[8] In a bare-bones case such as this, the prejudicial effect of multiple errors cannot be denied. To the extent that there is any uncertainty as to what I see as clear reversible error in the circuit court's refusal to give an instruction on attempt, the cumulative effect of these two additional errors, combined with the court's failure to instruct on attempt, removes all doubt; this case should be reversed and remanded for a new trial.

For the reasons expressed herein, I respectfully dissent.

---

[8] In their respective pretrial statements, A.M. said that she had immediately disclosed to her mother, which her mother adamantly denied. In their respective trial testimony, the mother now insisted that A.M. had immediately disclosed to her, which A.M. now adamantly denied.