STATE OF WEST VIRGINIA

*v.*

DANNY LEE BALL

(No. 14074)

Decided April 1, 1980.

*Ward & Cline, John L. Ward and Michael R. Cline,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard L. Earles,* Assistant Attorney General, for defendant in error.

NEELY, CHIEF JUSTICE:

The appellant, Danny Lee Ball, was arrested on 25 July 1976 in front of the Cold City Carry-out near Danville, West Virginia. The arresting officers testifed that they had observed the appellant leave the Cold City Carry-out, enter his pickup truck, start the truck, and pull it forward and backward several times, at which point they arrested him for drunk driving. It is undisputed that the appellant was arrested on a private parking lot. The appellant was convicted of drunk driving and sentenced to four months in the county jail.

Two assignments of error must be addressed by the Court. First, appellant argues that *W. Va. Code,* 17C-5A-5(c) [1968] establishes an impermissible presumption contrary to *State v. Pendry,* ___W.Va.___, 227 S.E.2d 210 (1976) when it says:

> Evidence that there was, at that time, ten hundredths of one percent or more, by weight, of alcohol in his blood, shall be admitted as prima facie evidence that the person was under the influence of intoxicating liquor.

Second, the appellant argues that his arrest upon a private parking lot for violation of *W. Va. Code,* 17C-5-2(a) [1976] is illegal because *W. Va. Code,* 17C-2-1 [1972] provides that chapter 17 shall apply to the operation of vehicles only upon streets and highways except where otherwise specifically provided.

I

We do not find *W. Va. Code,* 17C-5A-5(c) [1968] unconstitutional because it provides that one tenth of one percent or more, by weight, of blood-alcohol shall be admit-

ted as *prima facie* evidence of intoxication.[1] *State v.*

[1] The U.S. Supreme Court has wrestled with the problem of presumptions in criminal legislation numerous times in the past few years. In *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L. Ed. 1519 (1943), the Supreme Court established the so-called "rational connection" standard for reviewing the validity of statutory presumptions under the requirements of constitutional due process. This definition was refined in the field of criminal legislation so that "[t]he upshot of *Tot* [and subsequent cases] is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed. 2d 57 (1969). Thus, possession of heroin may be presumed to be illegally imported since it is not manufactured in the United States, while the possession of cocaine may not be so presumed, since cocaine is produced in the United States. *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L. Ed. 2d 610 (1970). *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975), which declared a statutory presumption requiring a defendant to prove that he acted in the heat of passion or sudden provocation in order to reduce homicide to manslaughter to be unconstitutional, has been subject to numerous interpretations regarding its evaluation of the use of presumptions in the criminal field. Our own Supreme Court, in *State v. Pendry, supra*, concluded that *Mullaney* stood for three general propositions:

(1) In a criminal case, the State is required to carry the burden of proving beyond a reasonable doubt every material element of the crime with which the defendant is charged; (2) In carrying its burden of proof beyond a reasonable doubt, the State is not entitled to an instruction which requires a jury to accept as proved beyond a reasonable doubt any element of the criminal offense charged and this concept embraces presumptions (more properly inferences) as to which the jury may be instructed; and (3) A defendant in a criminal case cannot be required to present evidence either in terms of going forward with the evidence or in terms of bearing the burden of persuasion in connection with any material element of the crime charged.

The U.S. Supreme Court has recently withdrawn from such a rigid reading of the use of presumptions in the criminal law as outlined in *Pendry*. In *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L. Ed. 2d 777 (1979) the Court upheld a statutory presumption that the presence of a firearm in a vehicle was evidence of its illegal possession by all the occupants. In reaching this conclusion the Court drew a distinction between a permissive presumption in which the basic fact constitutes *prima facie* evidence of the elemental fact which the party may challenge as

*Pendry, supra,* requires the State to prove beyond a reasonable doubt any material element of the crime with which the defendant is charged. In *Pendry* the instruction told the jury that the defendant intended the consequences that resulted from his use of a deadly instrument.

We have been careful to limit the use of presumptions when they supply a material element of the crime, particularly when they supply an element which requires intent. In *State ex rel. Cogar v. Kidd,* ___W.Va.___, 234 S.E.2d 899 (1977) we found a statutory presumption that a defendant intended to appropriate funds if he failed to pay over or account for property to be unconstitutional since it relieved the State of the duty to prove a materi-

---

applied to him and a mandatory presumption which instructs the jury that they must find the presumed fact upon proof of the basic fact. Thus in *Allen* the Court reaffirmed the "more likely than not" standard for permissive presumptions established in *Tot, supra* and *Leary, supra* and rejected the application of a beyond a reasonable doubt standard. We would respectfully point out that we do not approve of the Supreme Court's retreat from its analysis in *Mullaney.* Had we decided *Allen* we would not have been satisfied with a "more likely than not" standard. In *Sandstrom v. Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979) the Court clarified the definition of a mandatory presumption in holding that a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the due process clause of the Fourteenth Amendment. Since we are not required to distinguish between a mandatory and a permissive presumption in this instance, we are reluctant to skate onto the thin ice of presumptions and will retreat for the moment to the firmer ground of our earlier, less adventurous observation in *State v. Pendry,* ___ W.Va. ___, 227 S.E.2d 210 (1976):

There is no highway by which any of us can safely walk through 'conclusive presumptions', 'permissive presumptions' and 'mandatory presumptions.' As Justice Neely said in *Roe v. M & R Pipeliners, Inc.,* W.Va., 202 S.E.2d 816, 820 (1973):

Few areas of the law are as confusing or as hotly debated as the law of presumptions. As one text writer put it, "Every writer of sufficient intelligence to appreciate the difficulties of the subject matter has approached the topic of presumptions with the sense of hopelessness and has left it with a feeling of despair." Morgan, "Presumptions" 12 Wash. L. Rev. 225 (1937). 227 S.E.2d at 222.

al element of the crime of embezzlement. Similarly, in *Pinkerton v. Farr*, ___W.Va.___, 220 S.E.2d 682 (1975) we declared a conspiracy statute (the Red Men's Act) unconstitutional because it stated that being present and aiding and abetting in certain criminal acts automatically made the defendant guilty of conspiracy, unless he could produce evidence to the contrary.

Driving under the influence of alcohol, however, is not a common law crime like embezzlement or conspiracy which requires the proof of the element of intent, nor for that matter a common law crime like murder which requires the proof of elements such as malice which have historical definitions developed over hundreds of years.[2] The State need not prove that the driver intended to get drunk, or that he was aware of the act of driving while drunk; the State need only establish that the defendant was drunk. The statute in question does not relieve the State from the duty of proving that the driver had the requisite one tenth of one percent alcohol in his system; it simply removes the necessity of providing an expert at each trial to testify to the effect of that percentage of alcohol upon the defendant's ability to drive.

*W. Va. Code*, 17C-5A-5(c) is, in effect, a definition of intoxication. There is ample medical authority to indicate that the blood-alcohol content set forth in the statute impairs the reflexes of human beings to such an extent that they present a danger when driving.[3] In effect, we may say that the logical connection between the proven fact of requisite blood-alcohol content and

[2] *See* Justice Powell's opinion in *Mullaney v. Wilbur*, 421 U.S. 684, 692–696, 95 S.Ct. 1881, 1886–88, 44 L. Ed. 2d 508 (1975) for his review of the history of the common law crime of homicide. In tracing the changing role of malice in determining the degree of culpability attached to unlawful homicide, he found that the clear trend had been toward requiring the State to prove the absence of provocation.

[3] 4 R.N. Gray, *Attorney's Text Book of Medicine*, para. 132.52 (1979); Committee on Medicolegal Problems, American Medical Association, *Alcohol and the Impaired Driver, A Manual on the Medical Aspect of Chemical Tests for Intoxication*, Chapter V (1972); and, Alcohol and the Motorist: Practical and Legal Problems of Chemical Testing, 44 Minn. L. Rev. 673 (1960).

the presumed fact of intoxication is that the first demonstrates the second. While the jury may choose to disbelieve that a particular individual with one tenth of one percent, by weight, of alcohol in his blood was under the influence of intoxicating liquor, this percentage of alcohol alone is sufficient to support a jury finding of guilt.[4] If the Legislature had chosen to make it a crime for any person to drive upon the highways with one tenth of one percent or more, by weight, of alcohol in his blood, they most certainly could have done so.[5] While the statute may be inartfully phrased, this is its overall effect. Consequently we hold that *W. Va. Code*, 17C-5A-5 is not unconstitutional under any of the principles set forth in *State v. Pendry, supra.*

## II

We do, however, agree with the appellant that *W. Va. Code*, 17C-2-1 [1972] which says:

The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon streets and highways except:

---

[4] The validity of similar statutory presumptions has been established by appellate courts in many states. *Slagle v. State*, 570 S.W.2d 916 (Tex. Cr. App. 1978); *State v. Coates*, 17 Wash. App. 415, 563 P.2d 208 (1977); *State v. Winquist*, 247 N.W.2d 256 (Iowa 1976); *People v. Schrieber*, 45 Cal. App. 3d 917, 119 Cal. Rptr. 812 (1975); *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974); *State v. Adams*, 131 Vt. 413, 306 A.2d 92 (1973); *Marcum v. Commonwealth*, 483 S.W.2d 122 (Ky. 1972); *Varner v. State*, 493 P.2d 452 (Okla. 1972); *State v. Johnson*, 42 N.J. 146, 199 A.2d 809 (1964); *State v. Childress*, 78 Ariz. 1, 274 P.2d 333 (1954); and *Kay v. United States*, 255 F.2d 476 (4th Cir.) *cert. denied*, 358 U.S. 825, 79 S.Ct. 42, 3 L. Ed. 2d 65 (1958); *See* 2 R.E. Erwin, Defense of Drunk Driving Cases, para. 26.02 (1979), and Annot., 16 A.L.R.3d 748 (1967).

[5] Some states have enacted legislation providing that a person driving with a specified concentration of alcohol shall be guilty of an offense. Under those statutes the State must prove only that the defendant was driving and that a proper test had shown the requisite amount of alcohol in the defendant's system. For appellate decisions upholding the constitutionality of such statutes *see Roberts v. State*, 329 So.2d 296 (Fla. 1976); *State v. Basinger*, 30 N.C. App. 45, 226 S.E.2d 216 (1976); *Greaves v. State*, 528 P.2d 805 (Utah 1974); and *Coxe v. State*, 281 A.2d 606 (Del. 1971).

> (1) Where a different place is specifically referred to in a given section.

does modify *W. Va. Code*, 17C-5-2(a) [1976] which says:

> It is unlawful and punishable as provided in subsections (c), (d) and (e) of this section for any person to drive any vehicle in this State while: (1) He is under the influence of alcohol.

The State argues that the intent of the current version of the statute is to remove the former requirement that a person be upon a highway to be prosecuted for drunk driving.[6] The earlier version of *W. Va. Code* 17C-5-2 [1957] said:

> It is unlawful and punishable as provided in subsection (c) of this section for any person who is under the influence of intoxicating liquor to drive any vehicle on any highway of this State.
> . . .

However, penal statutes must be strictly construed[7] and notwithstanding our own inferences with regard to the Legislature's intent in changing the language of this particular section, we must find that *W. Va. Code*, 17C-2-1 [1972] requires that if chapter 17C is to apply elsewhere than upon streets and highways a different place must be specifically set forth. In the criminal law the question is never what the Legislature intended, but rather what a person of ordinary intelligence would infer from a plain reading of the statute involved. In this regard *W. Va. Code*, 17C-5-2 [1976] does not specifically refer to another place. Consequently, we must hold that the charge of driving while under the influence of intoxi-

---

[6] Under the prior statute, *W. Va. Code*, 17C-5-2 [1957], we affirmed Judge Silver's decision to quash a warrant charging a defendant with operating a motor vehicle upon a public parking lot while under the influence of liquor, since the public parking lot was not a public highway within the meaning of the statute. *State v. Cole*, ___W.Va.___, 238 S.E.2d 849 (1977).

[7] *State v. Cole*, ___W.Va.___, 238 S.E. 2d 849 (1977); *State v. Riley*, ___W.Va.___, 215 S.E.2d 460 (1975); *Dials v. Blair*, 144 W.Va. 764, 111 S.E.2d 17 (1959); *State v. Pyles*, 86 W.Va. 636, 104 S.E. 100 (1920).

cating liquors cannot be sustained against the appellant because the State was unable to show that he was drunk while on a street or highway.[8]

Therefore, for the reasons assigned above the judgment of the Circuit Court of Boone County is reversed.

*Reversed.*

---

[8] It is the general rule in our sister states that a provision proscribing driving while intoxicated without specifying the applicable areas will proscribe drunk driving anywhere, Annot., 29 A.L.R. 3d 938 (1970). However, in the case that most nearly resembles our own the Court of Appeals of New Mexico found that a city traffic code provision which prohibited driving under the influence on highways prevented the application of the broader state statute which applied to "highways and elsewhere throughout the state," *City of Las Cruces v. Davis*, 87 N.M. 425, 535 P.2d 68 (1975). Thus the New Mexico Appeals Court similarly refused to construe the conflicting provisions as ambiguous thereby allowing a legislative intent to be inferred which would make the statute applicable to private property.