332 S.E.2d 574

**STATE of West Virginia**

v.

**Fred HARTSHORN.**

No. 16299.

Supreme Court of Appeals of West Virginia.

Decided March 1, 1985.

Dissenting Opinion July 9, 1985.

Thomas L. Butcher, Public Legal Services, Charleston, for appellant.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Chief Justice:

The appellant, Fred Hartshorn, was convicted in the Circuit Court of Nicholas County of first-degree sexual assault and sentenced to an indeterminate term of ten to twenty years. Because the evidence in this case clearly does not support a conviction for first-degree sexual assault, we reverse the conviction and remand the case for a new trial.

On 3 March 1983 Tommy Cloninger, then fifteen years old, approached Sergeant Jeff Bess of the Richwood Police Department and alleged that he was sexually molested by the appellant, Fred Hartshorn, (an adult

thirty-four years old) some one year and seven months before, on 20 August 1981. Sergeant Bess undertook to investigate this accusation and, as a result, the appellant was charged, indicted, and tried on 11 July 1983. The appellant steadfastly maintains his innocence and denies all charges against him.

Tommy Cloninger and Fred Hartshorn were well acquainted with one another before the night of 20 August 1981. Earlier that day Mr. Hartshorn invited Tommy to assist him in mowing the lawn of a husband and wife named Thorpe. After the work was finished, Fred and Tommy chatted with the Thorpes until about midnight and, according to Tommy, drank wine and smoked marijuana. Thereafter they both accepted the Thorpes' offer to stay the night. They settled down next to one another with sleeping bags on the floor. From this point the parties' accounts of what subsequently occurred vary dramatically.

The appellant and Mrs. Thorpe (who testified on his behalf) insist that nothing unseemly took place that night. Mrs. Thorpe was adamant that she and her husband would have heard any unusual nocturnal activity in the adjacent room where the appellant and Tommy were asleep. She explained that her bed was but nine feet from where the two grass cutters lay and that no door separated the two rooms to muffle extraneous noise.

Tommy had a rather different version of the night's events. He related how he settled down next to the appellant on his sleeping bag and began to doze. A few moments later Mr. Hartshorn reached over, unzipped Tommy's trousers and began to fondle him. Tommy, this time, was able to persuade the appellant to stop. By his own testimony Tommy decided not to dwell on the event and tried to sleep. In this, however, he was unsuccessful. Tommy maintains that suddenly Fred Hartshorn accosted him and pulled his trousers down to his ankles. The appellant then wrapped his legs around him and held him tightly in his arms. Despite his "pretty loud" protestations Tommy insists that the appellant sodomized him. Tommy asserts that he did not appeal for help from the Thorpes because they "were more *his* friends than mine." After the appellant had his way with Tommy, both of them went to sleep. Tommy testified that he was awakened, a third time, a few hours later by the appellant who again was stroking him. But this time, when Tommy asked him to stop, the appellant complied.

Tommy testified that he did not leave the Thorpes after the sexual assault because he was intoxicated with wine and marijuana and because his house was over a mile distant. He also claimed that the defendant probably would have prevented his leaving.

In describing to the court the serious bodily injuries that he sustained from the assault Tommy said that his legs ached the next day and that he became severely constipated a month or so later. Tommy also claimed that he developed a spinal deformity from the sodomy. He did not, however, notice any damaged rectal tissue or pain the morning after the event.

At trial, Sergeant Jeff Bess was asked by the defense if any of Tommy's allegations were corroborated by, for example, a medical examination. The investigating officer replied "[n]ot by medical examination. He was given a polygraph examination that showed he was telling the truth." Defense counsel's motion to strike this testimony was granted and the jury was ordered to disregard the testimony, but a subsequent motion for a mistrial was denied. A directed verdict at the conclusion of all the testimony was also refused.

Defense counsel attempted to have the court dismiss the first and second degree sexual assault charges because counsel felt that the "forcible compulsion" element in each offense was absent. Instead the jury was instructed that it had the option of finding the defendant guilty of sexual assault in the first degree under *W. Va. Code* 61–8B–3 [1976]; sexual assault in the second degree, *W. Va. Code* 61–8B–4 [1976]; or sexual assault in the third degree, *W. Va. Code* 61–8B–5 [1976]. The jury was also told that it could find Mr. Hartshorn guilty

of sexual abuse in either the first, *W. Va. Code* 61–8B–6 [1976] or the third degree, *W. Va. Code* 61–8B–8 [1976], should it find the facts insufficient to warrant assault.[1] Appellant was convicted of first degree sexual assault.

## I

This Court initially notes that proving any kind of rape is seldom simple. Lord Chief Justice Hale stated the problem succinctly in 1630 when he wrote that rape "is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." 1 Hale P.C. 634 [1630]. This is an emotional subject that requires careful statutory exegesis.

*W. Va. Code* 61–8B–3 [1976] as it existed at the time of the alleged offense, read as follows:

(a) A person is guilty of sexual assault in the first degree when:

(1) He engages in sexual intercourse with another person by forcible compulsion; and

(i) He inflicts serious bodily injury upon anyone; or

(ii) He employed a deadly weapon in commission of the crime; or

(iii) The victim was not a voluntary social companion of the actor on the occasion of the crime; or

(2) He engages in sexual intercourse with another person who is incapable of consent because he is physically helpless; or

(3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned not less than ten nor more than twenty years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than

ten nor more than twenty years. [1976, c. 43.]

"Forcible compulsion" was defined in *W. Va. Code* 61–8B–1(1) [1976] as:

(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(b) Threat or intimidation expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped.

The *W. Va. Code* 61–8B–1(9) [1976] describes a "serious bodily injury" as one "which creates a substantial risk of death, which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." *W. Va. Code* 61–8B–4 [1976], which defines sexual assault in the second degree, states:

(a) A person is guilty of sexual assault in the second degree when:

(1) He engages in sexual intercourse with another person by forcible compulsion; or

(2) By forcible compulsion, he causes penetration, however slight, of the female sex organ or of the anus of any person, by any inanimate object for the purpose of gratifying the sexual desire of either party.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five nor more than ten years, or fined nor [sic] more than ten thousand dollars and imprisoned in the penitentiary not less than five nor more than ten years.

■ To sustain this conviction of first degree sexual assault, we must first determine if the appellant engaged in sexual intercourse with Tommy by forcible compulsion as defined by statute. It does not appear that he did. There is no evidence that the appellant threatened or otherwise

---

**1.** This Court must emphasize here that the appellant was convicted under the sexual offenses statutes that were promulgated in 1976. In 1984, the legislature revised substantially our statutes governing sexual offenses.

intimidated Tommy. He did not hit him or even attempt to do so. None of the appellant's actions constituted forcible compulsion to overcome such "earnest resistance as might reasonably be expected under the circumstances." Tommy admitted that he did not cry out to the Thorpes who were asleep in the next room or make any concerted effort to escape the appellant. On cross-examination he first mentioned that he attempted to strike Mr. Hartshorn with his elbows but offered no other evidence of serious resistance.

This Court understands that the victim of a sodomy assault may be so petrified by his attacker that he is struck dumb with terror during a sexual assault and therefore meekly submits. However, in this case Tommy, by his own admission, did not plead with the appellant or attempt to offer him any serious resistance. He did not try to escape from the appellant.

Furthermore he was clearly a "voluntary social companion" of the appellant under *W. Va. Code* 61–8B–3(a)(1)(iii) [1976] who had offered to help with the yard work and spend the night next to him thereafter. In these circumstances the Court cannot believe that Tommy offered the degree of "earnest resistance" to the sexual assault against him that is contemplated by *W. Va. Code* 61–8B–1(1)(a) [1976] and necessary to sustain a conviction for sexual assault in the first degree. Indeed, Tommy does not claim to have been afraid of the appellant at all.

In addition, Tommy is not incapable of consent under *W. Va. Code* 61–8B–3(a)(2) [1976] and is not under the age of eleven, *W. Va. Code* 61–8B–3(a)(3) [1976]. A reading of the statutes conclusively indicates that it was error for the lower court to give the jury the option of convicting the appellant for first or second degree sexual assault since the degree of forcible compulsion contemplated by both *W. Va. Code* 61–8B–3 [1976] and *W. Va. Code* 61–8B–4 [1976] was absent.

## II

*W. Va. Code* 61–8B–1(9) [1976] defines a "serious bodily injury" as a "bodily injury which creates a substantial risk of death, which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." Reading this statute we are surprised by the State's argument that the "serious bodily injury" requirement is satisfied by a showing of psychological injury. Tommy said that, after the assault, his legs ached and that a month after the incident he suffered from severe constipation, a chronic back pain, and a protruding vertebra, all of which he attributed to the assault. As to psychological injury, Tommy felt embarrassed while his mother stated that his school performance declined precipitously after the night he spent with the appellant (though she did not learn of that night's events until nineteen months later). Furthermore, she testified that he developed poor eating habits. No medical testimony was, however, introduced.

The statutory definition in West Virginia of a "serious bodily injury" is precisely the definition recommended by the *Model Penal Code*. The *Code* describes "serious bodily injuries" in sexual abuse cases as injuries that result from a "brutal and violent attack involving not only sexual indignity but also grave injury or risk of death." *Model Penal Code & Commentaries*, § 213.1 at 307–08. Psychological injuries were specifically excluded by the compilers of the *Model Penal Code:*

> [T]he definition of 'bodily injury' . . . excludes from liability under the assault offense wrongs based solely upon insult or emotional trauma. *Supra,* § 211.1, at 188.

Some of our sister states' statute books do not define a "serious bodily injury" or even mention the term in their sex offense statutes. *See e.g., N.Y. Penal Law,* § 130.00 *et seq.* (McKinney 1965). Other state statutes contain the term, but do not define it. *See e.g., Iowa Code* § 709.2 [1976].

A few states have adopted the recommendations of the *Model Penal Code, supra,* and, like West Virginia, set statutory guidelines to define "serious bodily injury."

In these states a psychological injury is not considered to be a "serious bodily injury." *See e.g., Vt.Stat.Ann.* tit. 13, § 3251(4) [1977]; *Tenn.Code Ann.* § 39–2–101(2) [1977]. *See also, Mo.Ann.Stat* § 556.-061(26) [Vernon 1984]. New Hampshire and New Mexico, however, have statutorily declared that a "serious bodily injury" includes mental anguish and trauma. *See N.H.Rev.Stat.Ann.* § 632–A:1 [1979] and *N.M.Stat.Ann.* § 30–9–10(C) [1979].

The Supreme Court of Iowa recently upheld the conviction of a rapist's accomplice in a case in which that court found a direct connection from psychological injury to the impairment of a bodily function. The court said that:

> ... the jury could find the victim suffered bodily injury which produced emotional trauma, in turn causing protracted loss or impairment of the function of a bodily member or organ. *State v. McKee,* 312 N.W.2d 907, 914 (Iowa 1981).

The court noted, however, that "if the victim's emotional trauma was attributable solely to the repulsiveness and indignity of sexual abuse, it was not caused by bodily injury." *Id.* Normally a bodily injury referred "to injury to the body, or to sickness or disease contracted by the injured as a result of injury." *Id.,* at 913 (Citing *Black's Law Dictionary* with approval.)

■ Until the West Virginia Legislature defines a serious personal injury expansively to include "mental anguish or trauma" this Court feels that it would be improvident to enlarge upon the statutory definition of a serious bodily injury. The statute is very specific in its definition of "serious bodily injury" and it excludes psychological injury. It is one of the pillars of our criminal law that penal statutes must be construed most strongly against the state and in favor of the defendant. Syllabus Point 2, *State v. Ball,* 164 W.Va. 588, 264 S.E.2d 844 (1980). Therefore, because *expressio unius est exclusio alterius,* we are led to hold that a psychological injury is not a "serious bodily injury" under *W.Va. Code* 61–8B–3(a)(1)(i) [1976].

## III

■ The defense correctly argues that polygraph evidence is inadmissible in West Virginia. As this Court stated in Syllabus Point 2 of *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979): "Polygraph test results are not admissible in evidence in a criminal trial in this State." Clearly, the testimony of Sergeant Bess relating to the polygraph examination ought not to have been introduced, but we need not consider this error in greater detail because we reverse on other grounds.

Accordingly, we reverse this case and it is remanded to the Circuit Court of Nicholas County for a new trial.

Reversed and Remanded.

McGRAW, Justice, dissenting:

I dissent from the majority's substitution of its view of what constitutes sufficient resistance and serious bodily injury for that of the jurors who had the benefit of observing the demeanor of the parties involved. The victim, who was fifteen years old, plied with alcohol and marijuana, in an unfamiliar, and perhaps hostile, environment, was suddenly sodomized in the middle of the night by the appellant, who was more than twice the victim's age. Although the victim's protests thwarted an initial attack, unfortunately, the appellant persisted until his efforts succeeded. The majority, in my view, fails to take into account the psychological setting in which these events took place. First, the age difference between the victim and both the appellant and his hosts placed the victim at a psychological disadvantage. Second, provision and consumption of alcohol and marijuana both diminished the victim's volition and could have created a sense of false trust between the parties concerned. Third, the attack occurred in the middle of the night, when the victim's weariness, exacerbated perhaps by the alcohol and marijuana, would have diminished his capacity to resist. Finally, the victim could well have perceived his hosts' condonation of the appellant's activities given their proximity and their apparently friendly relationship with the appellant, and could have

believed that they would come to the appellant's aid if he had protested too vociferously. Presumably, the jury weighed these factors in determining that the "forcible compulsion" element of first degree sexual assault had been met. Although the majority states that it "understands that the victim of a sodomy assault may be so petrified by his attacker that he is struck dumb with terror during a sexual assault and therefore meekly submits," maj.op. at 277, it penalizes the unfortunate victim for failing to "plead with the appellant" or "try to escape from the appellant," *id.* Furthermore, to find that severe constipation, chronic back pain, protruding vertebra, diminished intellectual performance, and loss of appetite does not constitute "serious bodily injury" as defined under West Virginia Code 61–8B–1(9) (1984 Replacement Vol.) is ludicrous. For example, in *State v. McKee,* 312 N.W.2d 907, 913 (Iowa 1981), the Iowa Supreme Court held that a sexual abuse victim's "menstrual cramping and irregularity [which] had persisted for approximately five months" was alone sufficient to constitute "serious bodily injury" for purposes of a first degree sexual abuse conviction.

Accordingly, for the foregoing reasons, I respectfully dissent. I am authorized to say that Justice McHUGH joins me in this dissent.