IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 23-155

_____

FILED

**May 3, 2024**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. STATE OF WEST VIRGINIA,
Plaintiff Below, Petitioner,

v.

THE HONORABLE PAUL W. GWALTNEY, JR., JUDGE OF
THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA;
J.L. AND D.F.,
Respondents.

_____

Petition for a Writ of Prohibition

WRIT GRANTED

_____

Submitted: February 6, 2024
Filed: May 3, 2024

Patrick Morrisey, Esq.
Attorney General
Michael R. Williams, Esq.
Principal Deputy Solicitor General
Andrea Nease Proper
Deputy Attorney General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Petitioner

Kevin T. Tipton, Esq.
Tipton Law Offices
Morgantown, West Virginia
Attorney for Respondents J.L. and D.F.

JUSTICE BUNN delivered the Opinion of the Court.
JUSTICE WOOTON concurs in part and dissents in part and may write separately.

**SYLLABUS BY THE COURT**

1.      "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's

order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.    A circuit court may not grant a defendant's pretrial motion to dismiss an indictment on the basis of the sufficiency of the evidence or whether a factual basis for the indictment exists.

BUNN, Justice:

Petitioner, the State of West Virginia, invokes this Court's original jurisdiction and seeks a writ of prohibition to prevent the Honorable Paul W. Gwaltney, Jr., Judge of the Circuit Court of Monongalia County, from enforcing the circuit court's order dismissing a six-count indictment.[1] The indictment charged the defendants in the underlying action, Respondents J.L. and D.F. ("the parents"), with crimes relating to child abuse and neglect.[2] Because we find that the circuit court exceeded its legitimate powers and invaded the province of the grand jury by dismissing the indictment, and the State will be damaged in a way uncorrectable on appeal, we grant the writ.

---

[1] Petitioner listed the Honorable Susan B. Tucker, former Judge of the Circuit Court of the Seventeenth Judicial Circuit, which serves Monongalia County, as one of the original respondents in this matter, as she issued the order that is the subject of the petition for a writ of prohibition. However, while the petition was pending, Judge Tucker retired and Judge Gwaltney was appointed to serve the unexpired portion of Judge Tucker's term. Accordingly, Judge Gwaltney is the appropriate party and has been substituted pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] As this case involves juveniles and a prior abuse and neglect proceeding, we use the initials for the last names of the defendants in the underlying action. *See* W. Va. R. App. P. 40(e)(1).

# I.

## FACTUAL AND PROCEDURAL HISTORY

Prior to 2020, J.L. and D.F. adopted three children. In 2020, the West Virginia Department of Human Services ("DHS")[3] filed a petition alleging that J.L., the mother, and D.F., the father, abused and neglected those children. During that proceeding, both parents stipulated that they "engaged in excessive corporal punishment . . . which resulted in physical abuse." *In re A.F.-1*, No. 21-0712, 2022 WL 3949414, at *6 (W. Va. Aug. 31, 2022) (memorandum decision) (alteration in *In re A.F.-1*) (regarding mother); *accord In re A.F.-1*, No. 21-0711, 2022 WL 3949315, at *6 (W. Va. Aug. 31, 2022) (memorandum decision) (regarding father and containing same quotation). Ultimately, in August 2021, the circuit court terminated the parental rights of both parents, although it did not find that the abuse and neglect met the standard for "aggravated circumstances" that would relieve the DHS of the requirement that it provide certain services.[4] *In re A.F.-1*, 2022 WL 3949414 at *3; *accord In re A.F.-1*, 2022 WL 3949315, at *4. This Court

---

[3] Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect proceedings, the agency is now the Department of Human Services ("DHS"), and we will reference the newly formed agency throughout this opinion.

[4] In an abuse and neglect case, if DHS proves aggravated circumstances, it "is not required to make reasonable efforts to preserve the family." W. Va. Code § 49-4-604(c)(7). "Aggravated circumstances" include "abandonment, torture, chronic abuse, and sexual abuse." § 49-4-604(c)(7)(A).

affirmed the circuit court's termination of J.L. and D.F.'s parental rights. *In re A.F.-1*, 2022 WL 3949414, at \*1; *accord In re A.F.-1*, 2022 WL 3949315, at \*1.

At some point in time, the State charged the parents in a criminal complaint with crimes relating to the abuse and neglect of the children. The complaint alleged violations of West Virginia Code § 61-8D-4(b), child neglect causing serious bodily injury. During the preliminary hearings related to the criminal complaint, the State purportedly argued that bodily injury included psychological injury. At one of the preliminary hearings, a magistrate found that there was no probable cause to support the charges against J.L.[5]

In September 2021, a grand jury returned a six-count indictment against the parents, as follows:

- Counts One and Two alleged J.L. and D.F. together committed "'Child Abuse Resulting in Bodily Injury' by unlawfully, intentionally and feloniously abusing" children A.F. (Count One) and J.F. (Count Two), "causing substantial physical pain, illness or imprint [sic] of physical condition," in violation of West Virginia Code § 61-8D-3(a).

- Counts Three and Four alleged that J.L. and D.F. together committed "'Child Neglect Creating Risk of Serious Injury' by unlawfully, intentionally and feloniously neglecting" A.F. (Count Three) and J.F. (Count Four), "and that by gross neglect

---

[5] Although the complaint and subsequent preliminary hearings were not included in the appendix record, the parties' briefs and documents in the record refer to these circumstances. We include facts related to the complaint and the preliminary hearings because the circuit court relied on arguments occurring at the preliminary hearings to rule on the motion to dismiss the indictment.

created a substantial risk of serious injury" to each child, in violation of West Virginia Code § 61-8D-4(c).

- Counts Five and Six alleged that J.L. and D.F. together committed "'Child Neglect Causing Bodily Injury' by unlawfully, intentionally and feloniously neglecting" A.F. (Count Five) and J.F. (Count Six), and that neglect "caused bodily injury" to each child, in violation of West Virginia Code § 61-8D-4(a).[6]

The indictment did not include any charges alleging violations of West Virginia Code § 61-8D-4(b), child neglect causing serious bodily injury, previously charged in the complaint, nor did it charge the parents with any crimes relating to the parents' third adopted child.

The parents moved the circuit court to dismiss the indictment, arguing that Counts One and Two failed to track the statutory language, as the indictment used the term "imprint," which does not appear in the statute, and that Counts Three and Four alleged "a substantial risk of serious injury," rather than reciting West Virginia Code § 61-8D-4(c)'s language by alleging "a substantial risk of serious *bodily* injury."[7] They also asserted that

---

[6] For the purposes of West Virginia Code § 61-8D-4(a), "'[b]odily injury' means substantial physical pain, illness or any impairment of physical condition." W. Va. Code § 61-8B-1(9); *see* W. Va. Code § 61-8D-4(a) (referring to W. Va. Code § 61-8B-1 for definition of "bodily injury").

[7] For the purposes of West Virginia Code § 61-8D-4(c), "'[s]erious bodily injury' means bodily injury which creates a substantial risk of death, which causes serious or prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ." W. Va. Code § 61-8B-1(10); *see* W. Va.

4

during the preliminary hearing, the State maintained that the alleged "bodily injury" included psychological trauma. The parents contended that this Court's holding in *State v. Hartshorn*, 175 W. Va. 274, 332 S.E.2d 574 (1985), precluded that interpretation of bodily injury, and that Counts One, Two, Five, and Six should be dismissed. Finally, they maintained that the circuit court had already heard the State's evidence in the earlier abuse and neglect proceeding,[8] and that Counts Three and Four should be dismissed because "absolutely no evidence" supported "any verdict in this case, under any standard of proof, much less beyond a reasonable doubt, that the [parents] grossly neglected their children to the point that they were at a substantial risk of dying, suffering serious and prolonged disfigurement, or anything else."

In response, the State asserted that the parents were "not charged solely based on psychological harm, but also for physical abuse." The State detailed the evidence of physical injuries and potential risks of serious bodily injury, which the State contended supported each of the indictment's counts. The State further explained that it had an expert witnesses who opined that psychological trauma or emotional abuse also can result in

---

Code § 61-8D-4(c) (referring to W. Va. Code § 61-8B-1 for definition of "serious bodily injury").

[8] The parents did not name this proceeding specifically in their motion to dismiss but reminded the circuit court that it had "heard all the evidence that the State has in this regard." In support of their argument before this Court, the parents repeatedly quote testimony from the abuse and neglect proceeding in their brief. However, the appendix record does not include any transcripts or documents from that proceeding.

physical impairment or injury that can meet the standard of bodily injury as defined in West Virginia Code § 61-8B-1.

During the first hearing on the parents' motion to dismiss, the parties focused on whether the State could prove the charged crimes at trial. The parents relied primarily on evidence submitted in the abuse and neglect proceeding and noted that the court "had days and days of testimony." Arguing that a witness testified in the related abuse and neglect proceeding "that there was absolutely no evidence of physical injury," the parents insisted that no evidence of gross neglect creating a substantial risk of serious injury existed. The parents also repeatedly emphasized the State's legal arguments during the preliminary hearing, asserting that those arguments were misleading and a misstatement of the law. The State contended it had evidence that (1) for Counts Three and Four, the parents grossly neglected the children, creating a substantial risk of serious bodily injury; and (2) for Counts One, Two, Five, and Six, the parents caused bodily injury that met the statutory requirements charged, without relying on proof of any psychological harms caused by the parents.

After the hearing, the parents moved the court to exclude testimony and evidence of psychological harm or injury, which the State opposed. The circuit court held another hearing, where it requested the parties again address the parents' motion to dismiss. The parents continued to assert that during the abuse and neglect proceeding, the State

presented no evidence of bodily or physical injury. The State reiterated, in detail, that it would present evidence to the jury to satisfy the elements of each indictment count. At the hearing, the court granted the parents' motion to dismiss, stating that "there is not sufficient evidence to support this indictment." The court did not consider any grand jury testimony when making its determination, and neither party submitted transcripts of the grand jury testimony.

In the subsequent written order, the court explained that it had "extensive knowledge of the facts and evidence in this case due to numerous hours of testimony in a companion abuse and neglect case[.]" It also based its decision, in part, on the State's purported argument in a preliminary hearing on the criminal complaint that bodily injury could include psychological trauma, which the circuit court found false and a "misrepresentation of the law" based upon its reading of *Hartshorn*, 175 W. Va. 274, 332 S.E.2d 574. Resolving "that the current law does not support the indictment" relating to Counts One, Two, Five, and Six, the court dismissed those counts.[9] The court dismissed Counts Three and Four as well, reciting the statutory definitions of "gross neglect" and "serious bodily injury" in relation to the alleged violations of West Virginia Code § 61-8D-4(c) and determining that it had "heard the State's evidence while presiding over

---

[9] The court did not analyze Counts Five and Six individually, but instead recited the charges and stated, "[f]or all the reasons set forth herein, specifically as they relate to Counts [One] and [Two], these two counts must also be dismissed."

the companion abuse and neglect case," and found that no evidence supported "any verdict beyond a reasonable doubt" that the parents "'grossly' neglected their children to the point that the children were at a substantial risk of dying, [or] suffering serious or prolonged disfigurement." The court reasoned that "the State put on a great deal of evidence in the [parents'] abuse and neglect case in its attempt to prove aggravating circumstances, which this [c]ourt ruled did not exist." In dismissing Counts Three and Four, the court concluded that no evidence existed that the parents "exhibited a 'clear disregard' for their children's health[,] safety[,] or welfare." The circuit court concluded by dismissing the entire indictment against the parents and striking the matter from its docket.

The State then filed a petition for a writ of prohibition, requesting that this Court prevent the circuit court from enforcing its dismissal order. In this action, the State argues that the circuit court had no authority to dismiss the indictment returned by a grand jury against the parents. We agree and grant the writ of prohibition.

## II.

### STANDARD FOR ISSUANCE OF WRIT

In criminal cases, in limited circumstances the State may request a writ of prohibition, asking this Court to prevent a circuit court from enforcing an order:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial

8

court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syl pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

In cases where the petitioner asserts that the lower court exceeded its legitimate powers, this Court has discretion to issue the writ:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

## DISCUSSION

As we discuss below, the circuit court exceeded its legitimate powers in dismissing the six-count indictment returned by the grand jury, which prevents the State from prosecuting the case. *See* Syl pt. 5, *Lewis*, 188 W. Va. 85, 422 S.E.2d 807. After we briefly review the function of the grand jury, discuss the circuit court's limited ability to review an indictment, and consider the *Hoover* factors, we issue the writ of prohibition. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

### A. The circuit court abused its legitimate powers by dismissing the indictment

An understanding of the basic purpose and procedures of the grand jury process demonstrates that the circuit exceeded its legitimate powers by dismissing the indictment in this case. The West Virginia Constitution establishes the grand jury's responsibility to determine whether to charge an individual with a felony: "No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury." W. Va. Const. art. III, § 4.[10] In felony

---

[10] Similarly, the Fifth Amendment to the United State Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury[.]" While the United States Supreme Court has not held that the Fifth Amendment's grand jury clause applies to the States, *State v. Adams*, 193 W. Va. 277, 280 n.3, 456 S.E.2d 4, 7 n.3 (1995) (citing *Hurtado v. California*, 110 U.S. 516, 4 S. Ct. 111, 28 L. Ed. 232 (1884)), we do look to federal case law, especially United States Supreme Court decisions, interpreting the Fifth Amendment's grand jury clause as guidance in interpreting the West Virginia's grand jury clause.

prosecutions, the grand jury's position is constitutional, not merely ministerial, as it is "the tribunal representing the people, for the purpose of charging crime and designating the criminal." *See State ex rel. Noll v. Dailey*, 72 W. Va. 520, 522, 79 S.E. 668, 669 (1913). Furthermore, the grand jury serves a "protective role" in the criminal justice system. *State ex rel. Swanigan v. Cline*, 177 W. Va. 107, 108, 350 S.E.2d 734, 736 (1986). Having "dual function," the grand jury behaves as "a sword" that investigates cases to bring accused individuals to trial on "just grounds" and as "a shield" to protect people against baseless prosecutions. *State ex rel. Miller v. Smith*, 168 W. Va. 745, 751, 285 S.E.2d 500, 504 (1981). Ultimately, the grand jury decides whether probable cause exists to *charge* a person with committing a crime, not whether the evidence proves beyond a reasonable doubt that a defendant must be *convicted* of that crime; the grand jury's role "is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial." *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 665, 383 S.E.2d 844, 847 (1989) (explaining the grand jury institution and its function).[11]

After a grand jury returns an indictment, circuit courts have limited powers of review. A court may review an indictment "only for constitutional error and

---

[11] *See also Bracy v. United States*, 435 U.S. 1301, 1302, 98 S. Ct. 1171, 1172, 55 L. Ed. 2d 489 (1978) (Rehnquist, J., in chambers) ("The grand jury does not sit to determine the truth of the charges brought against a defendant, but only to determine

prosecutorial misconduct." *See, e.g.*, *State v. Adams*, 193 W. Va. 277, 284, 456 S.E.2d 4, 11 (1995). Consequently, the court may not appraise the legality or sufficiency of the evidence considered by the grand jury in the absence of willful, intentional fraud. Syl., *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977) ("Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency.").[12] Instead, courts must presume that "every indictment is found upon proper

---

whether there is probable cause to believe them true, so as to require him to stand his trial.").

The grand jury consists of sixteen members. W. Va. R. Crim. P. 6(a). Typically, when determining whether to return an indictment that charges a person with a crime, a grand jury hears evidence provided by the State, and the prosecuting attorney may appear before the grand jury to present evidence, via sworn witnesses, of alleged criminal offenses. *See* Syl. pt. 2, *State ex rel. Miller v. Smith*, 168 W. Va. 745, 285 S.E.2d 500 (1981). Grand jurors must keep their proceedings secret, W. Va. R. Crim. P. 6(e)(2), and only the members of the grand jury deliberate and determine whether to return an indictment, W. Va. R. Crim. P. 6(d).

[12] Both parties address the sufficiency of the evidence relating to the indictment in their briefing, with the State arguing that sufficient evidence supports the indictment, while the parents disagree. The question of whether sufficient evidence supports the indictment is not properly before this Court or the circuit court. *See State v. Clements*, 175 W. Va. 463, 472, 334 S.E.2d 600, 609-10 (1985). In their briefs, both parties rely on Syllabus point 7 of *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989), which provides that "[i]n reviewing the evidence for sufficiency to support the indictment, the court must be certain that there was significant and material evidence presented to the grand jury to support all elements of the alleged criminal offense." However, *Pinson*'s creation of Syllabus point 7 arises from an allegation that a witness provided misleading testimony to the grand jury. *Pinson*, and particularly its Syllabus point 7, provides part of the procedure the circuit court follows in that circumstance. *See generally Pinson*, 181 W. Va. 662, 383 S.E.2d 844. We do not apply this syllabus point or

evidence." *State v. Clements*, 175 W. Va. 463, 472, 334 S.E.2d 600, 609-10 (1985). As the

grand jury is not the "ultimate" fact finder, if the grand jury hears "improper" evidence,

any purported error "can be corrected in the trial before a petit jury." *Id.*;[13] *see generally*

---

review the evidence supporting this indictment, as the underlying court did not consider
whether any witnesses provided misleading testimony before the grand jury.

 Furthermore, to the extent that the parents now argue that a grand jury
witness provided testimony that was misleading and inconsistent with the evidence in the
abuse and neglect proceeding, the parents did not argue that below, and, more significantly,
the circuit court did not base its rulings after considering any testimony before the grand
jury. In fact, the circuit court did not have any transcripts from the grand jury proceeding
to consider in ruling on the motion to dismiss.

 [13] *See also* Syl. pt. 2, *State v. Slie*, 158 W. Va. 672, 213 S.E.2d 109 (1975)
("The general rule is that the validity of an indictment is not affected by the character of
the evidence introduced before the grand jury, and an indictment valid on its face is not
subject to challenge by a motion to quash on the ground the grand jury considered
inadequate or incompetent evidence in returning the indictment.").

 Evidence that satisfies a probable cause standard, allowing a grand jury to
return an indictment, might not prove a defendant's guilt beyond a reasonable doubt, but
allowing a court "to inquire into the legality, or sufficiency" of the evidence considered by
the grand jury would "substitute . . . the opinion of the court for that of the grand jury, and
would ultimately lead to the destruction of the grand jury system." *State ex rel. Noll v.
Dailey*, 72 W. Va. 520, 522, 79 S.E. 668, 669 (1913). Moreover, should an indictment lack
proper evidence, or be based upon illegal evidence, and the prosecution "produces no other
evidence at the trial than what was before the grand jury" an acquittal will result. *Id.* Still,
at trial, the prosecution may produce "new and additional evidence of guilt," and "may not
have had all its evidence before the grand jury." *Id.* Dismissing an indictment before trial
would "cut off" the prosecution's right. *Id.*

13

*Barker*, 160 W. Va. 749, 238 S.E.2d 235 (refusing to quash an indictment based solely on hearsay testimony).[14]

A court also may review an indictment to determine whether the indictment is "constitutionally sufficient." *State v. Miller*, 197 W. Va. 588, 599, 476 S.E.2d 535, 546 (1996) (citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. Ed. 2d 590 (1974)). A constitutionally sufficient indictment must (1) state the elements of the charged offense; (2) put a defendant on "fair notice" of the charge against which a defendant must defend; and (3) allow a defendant "to assert an acquittal or conviction" to avoid double jeopardy. Syl. pt. 6, in part, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999) (listing three factors establishing a sufficient indictment). However, a review for constitutional sufficiency is limited to the face of the indictment and does not extend to any evidence supporting the indictment. *See* Syl. pt. 2, *id.* ("Assessment of the facial sufficiency of an indictment is limited to its 'four corners,' and, because supplemental

---

[14] Similarly, in *Costello v. United States*, the Supreme Court of the United States explained that the Fifth Amendment to the United States Constitution does not require that a court quash an indictment based entirely on hearsay. *See generally Costello*, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956). The *Costello* Court noted that "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Id.* at 363, 76 S. Ct. at 409.

pleadings cannot cure an otherwise invalid indictment, courts are precluded from considering evidence from sources beyond the charging instrument.").

The circuit court identified no reason relating to prosecutorial misconduct or constitutional sufficiency to support its dismissal of the indictment, and the parents did not argue those issues before the circuit court. Here, the circuit court dismissed the indictment on evidentiary grounds, because, it reasoned, no trial jury could convict the parents based on the evidence before the court during the related abuse and neglect proceeding. The circuit court noted that it had heard "numerous hours of testimony" in the abuse and neglect proceeding. It concluded that, for Counts One, Two, Five and Six, the "current law does not support the indictment," basing its determination on its knowledge of the abuse and neglect proceeding's evidence. For these counts, the court's analysis repeatedly referred to a magistrate proceeding that predated the indictment and, in part, included charges that were not part of the indictment. For Counts Three and Four, the court specifically noted that the State's evidence from the abuse and neglect proceeding could not cross the "beyond a reasonable doubt" threshold to secure a conviction. The resulting dismissal, based upon the circuit court's interpretation of the relevant facts, rather than on a permitted reason for dismissal, exceeded the circuit court's legitimate powers.

The circuit court's dismissal based on evidentiary conclusions invaded the grand jury's province. *See Pinson*, 181 W. Va. at 665, 383 S.E.2d at 847 (noting that an

15

indictment determines that the grand jury found probable cause for a defendant to stand trial). Here, the grand jury determined probable cause existed to charge the parents with the crimes detailed in the indictment.[15] Circuit courts have no authority to examine an indictment to determine whether sufficient evidence exists to support it, much less whether evidence exists to support *a guilty verdict*, at the pretrial motions stage. As we have stated, and now hold, "[a] circuit court may not grant a defendant's pretrial motion to dismiss an indictment on the basis of the sufficiency of the evidence or whether a factual basis for the indictment exists." *State v. Finley*, ___ W. Va. ___, ___ n.8, ___ S.E. 2d ___, ___ n.8, 2023 WL 6804936, at *3 (W. Va. Oct. 16, 2023); *see also* W. Va. R. Crim. P. 12(b)(1) (regarding pretrial motions). The circuit court had no power to dismiss the indictment based only on

---

[15] Furthermore, the circuit court persisted in discussing the State's legal arguments at the preliminary hearing, although that hearing was of no consequence to the indictment's validity. After the grand jury returned the indictment, the proceedings before the magistrate in determining whether probable cause existed for the criminal complaint, which in part regarded different statutes, were no longer at issue. *See* Syl. pt. 3, *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 268 S.E.2d 45 (1980) (noting, in part, that if the State arrests a defendant via complaint when the offense "must be brought before the grand jury, the defendant is entitled to a preliminary hearing," but if the State indicts a defendant "without a preliminary hearing or before one can be held, the preliminary hearing is not required"); *see also* W. Va. R. Crim. P. 5.1(b) (noting that if a magistrate finds "no probable cause to believe that an offense has been committed or that the defendant committed it" and subsequently dismisses a complaint against a defendant, "[t]he discharge of the defendant shall not preclude the state from instituting a subsequent prosecution for the same offense").

its improper consideration of evidence in a prior proceeding, and the dismissal exceeded the court's legitimate powers.[16]

In sum, the circuit court had no authority to dismiss the indictment based upon the court's knowledge of the evidence in the abuse and neglect proceeding and its opinion regarding the State's likelihood of obtaining convictions by a petit jury. Because the circuit court exceeded its legitimate powers by dismissing the indictment, absent the writ, the State would be prevented from prosecuting the parents with the six charged felonies. *See* Syl pt. 5, *Lewis*, 188 W. Va. 85, 422 S.E.2d 807.[17]

### B. A writ of prohibition should issue

Having found that the circuit court exceeded its legitimate powers by dismissing the indictment, we now turn to the standards recited in *Hoover* to conclude the State is entitled to the requested writ of prohibition. Syl. pt. 4, *State ex rel. Hoover v.*

---

[16] The State correctly notes that abuse and neglect proceedings "are not simply 'companion cases' to criminal prosecutions." *In re Taylor B.*, 201 W. Va. 60, 66, 491 S.E.2d 607, 613 (1997) (affirming a circuit court's refusal, in a civil abuse and neglect proceeding, to abide by the State and the father's plea agreement in a criminal proceeding where the State agreed it would terminate the abuse and neglect proceeding). They are separate cases, with separate standards of proof and concerns. As the *Taylor B.* Court recognized, the "'primary goal'" in abuse and neglect cases is "'the health and welfare of the children.'" Syl. pt. 2, in part, *id.* (quoting Syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996)).

[17] While Syllabus point five of *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992) requires that an application for a writ of prohibition be "promptly presented" by the State, this issue is not raised by either party, and we do not address it here.

17

*Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). First, for the same reasons that the circuit court exceeded its legitimate powers, the circuit court's order is "clearly erroneous as a matter of law," meeting the third *Hoover* factor. *Id*., in part. The circuit court dismissed the indictment on impermissible grounds. Additionally, the State "will be damaged or prejudiced in a way that is not correctable on appeal," the second *Hoover* factor, and the State has "no other adequate means, such as direct appeal, to obtain the desired relief," the first *Hoover* factor. *Id*., in part. The State only has limited rights to appeal in criminal cases, and only if the right is "conferred by the Constitution or a statute." Syl. pt. 1, in part, *State v. Jones*, 178 W. Va. 627, 363 S.E.2d 513 (1987). While the State may appeal if a circuit court finds an indictment "bad or insufficient," a bad or insufficient indictment means "there was a failure *substantively* to charge a crime," which was not alleged here. *State v. Walters*, 186 W. Va. 169, 172, 411 S.E.2d 688, 691 (1991). The State established it is entitled to relief in prohibition. The circuit court's findings, based on evidence presented in another proceeding, invaded the grand jury's constitutionally prescribed function and was clear error, and the State may not appeal the circuit court's ruling. For these reasons, we grant a writ of prohibition, precluding the circuit court from dismissing the indictment.

## IV.

## CONCLUSION

For the reasons stated above, this Court grants the writ of prohibition to prevent the circuit court from enforcing its order dismissing the six-count indictment.

Writ Granted.